UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Jessica Leah Kampschroer and Cory
Patrick Kampschroer

          Plaintiffs,

v.

Anoka County; City of Anoka; City of
Apple Valley; City of Arlington; City of
Baxter; City of Belle Plaine; Beltrami
County; Benton County; City of Blaine;
City of Bloomington; Blue Earth County;
City of Braham; City of Brooklyn Center;
City of Brooklyn Park; City of Brownton,
Buerkle Imports Company d/b/a Buerkle
Honda; City of Burnsville; City of
Cambridge; City of Cannon Falls; Carver
County; Cass County; Centennial Lakes
Police Department; City of Champlin; City
of Chaska; Chisago County; City of
Chisago; City of Columbia Heights; City of
Coon Rapids; City of Corcoran; City of
Cottage Grove; City of Crosby; Crow Wing
County; City of Crystal; Dakota
Communications Center; Dakota County;
City of Deephaven; City of Dundas; City of
Eagan; City of Eden Prairie; City of Edina;
City of Elk River; City of Fairmont;
Faribault County; City of Faribault; City of
Farmington; Fillmore County; City of
Foley; City of Forest Lake; City of Fridley;
City of Glencoe; City of Golden Valley;
Goodhue County; City of Goodview; Grant
County; City of Hastings; Hennepin
County; City of Hopkins; City of Howard
Lake; Hubbard County; City of
Hutchinson; City of Inver Grove Heights;
City of Isanti; Isanti County; City of
Jordan; Kanabec County; Lakes Area
Police Department; City of Lakeville; Le

Civil File No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Sueur County; City of Litchfield; City of
Mankato; City of Maple Grove; City of
Maplewood; McLeod County; City of
Medina; City of Mendota Heights; Mille
Lacs County; City of Minneapolis; City of
Minnetonka; City of Montgomery; City of
Moorhead; Morrison County; City of
Morristown; City of Mounds View;
Minneapolis Parks and Recreation Board;
Metropolitan Airports Commission; City of
New Brighton; City of New Hope; City of
New Prague; City of Newport; Nicollet
County; City of North Saint Paul; City of
North Mankato; City of Northfield;
Olmsted County; City of Owatonna; City
of Prior Lake; Ramsey County; City of
Ramsey; Rice County; City of Richfield;
City of Robbinsdale; City of Rochester;
Rochester Motors, LLC; City of
Rosemount; City of Roseville; City of
Sartell; City of Savage; Scott County; City
of Shakopee; Sherburne County; City of
Spring Lake Park; City of Saint Anthony;
City of Saint Cloud; City of Saint Francis;
Saint Louis County; City of Saint Louis
Park; City of Saint Paul; City of Saint Paul
Park; City of Saint Peter; City of Staples;
Stearns County; Steele County; City of
Stillwater; City of West Saint Paul;
Wadena County; City of Waite Park;
Washington County; City of Wayzata; City
of White Bear Lake; Winona County; City
of Woodbury; Wright County; Yellow
Medicine County; Pat McCormack in her
individual capacity as the Director of
Driver and Vehicle Services at the
Minnesota Department of Public Safety;
Michael Campion, in his individual
capacity as the Commissioner of the
Department of Public Safety; Ramona
Dohman, in her individual capacity as the
Commissioner of the Department of Public
Safety; DPS Does; John and Jane Does (1 -

1500) acting in their individual capacity as
supervisors, officers, deputies, staff,
investigators, employees or agents of the
other governmental agencies; and Entity
Does (1-50) including cities, counties,
municipalities, and other entities sited in
Minnesota and federal departments and
agencies,

Defendants.

For Plaintiffs' Complaint, for which Plaintiffs demands trial by jury on all claims

so triable, Plaintiff Jessica Leah Kampschroer ("Jessica") and Plaintiff Cory Patrick

Kampschroer ("Cory") (collectively referred to as "Plaintiffs") hereby states and alleges

as follows:

**INTRODUCTION**

This is a case to redress the abuse of power by numerous law-enforcement

personnel and public employees who impermissibly accessed the Minnesota Department

of Public Safety's system for maintaining the personal, private information of Minnesota

citizens.  Officers and employees from hundreds of different law-enforcement agencies

and entities chose to violate federal law, Minnesota and federal policy and the

constitutionally protected privacy rights of Plaintiffs, two popular local news

personalities.  Jessica, known on television as Jessica Miles, had her private personal

information obtained or used nearly 1,400 times without a permissible reason.  Cory

Kampschroer had her private personal information obtained or used over ninety times

without a permissible reason.

These personnel violated the federal Driver's Privacy Protection Act ("DPPA")
and violated their civil rights under 42 U.S.C. § 1983, by unlawfully accessing Plaintiffs'
protected driver's license information without any legitimate purpose.  More disturbing,
these personnel, charged with protecting and serving the public, knowingly abused their
positions of trust simply to satisfy their shallow desires to peek behind the curtain into the
private lives of the Plaintiffs, without their knowledge or consent, and without ever
informing them of their activities.  The utter disregard of their privacy rights by law-
enforcement personnel, public employees, and others caused Plaintiffs' emotional
distress and a logical fear for their personal safety.

The State of Minnesota, itself, has found that at least 50% of all officers statewide
are engaged in the use of this database for impermissible purposes, and therefore
violating federal civil and criminal laws.  Moreover, the access permitted to law-
enforcement officers, public employees, and others is easily obtained and makes highly
private information available, including health information and social security numbers,
the restriction of access to which is impossible to control by the Plaintiffs, impossible to
detect, and conducted in a deliberately concealed and surreptitious fashion.  These
Defendants are the window-peepers of the electronic data age.  Through lax policies and
apathetic enforcement of the law, these officials and governmental units have caused
direct damage to Plaintiffs, just as they have trampled upon the clear legislative
protections of all citizens' right to feel secure in their privacy.

### General Background of Law and Facts

1.      This is an action for injunctive relief and money damages for injuries sustained when personnel from various entities in Minnesota illegally obtained Plaintiffs' private, personal and confidential driver's license information without a legitimate or permissible law-enforcement purpose or any other lawful purpose.

2.      These law-enforcement personnel, public employees, and others viewed and obtained Jessica's private information approximately fourteen hundred times from 2003 to 2013.

3.      These law-enforcement personnel, public employees, and others viewed and obtained Cory's private information approximately 92 times from 2003 to 2013.

4.      Attached to this Complaint as Exhibit A is a copy of an audit prepared by the Minnesota Department of Public Safety showing the accesses of Jessica's driver's license information by name, not license plate number, with her driver's license number removed, and showing the "station," meaning the police department, sheriff's office, or other government entity through which the officer accessed her information.

5.      Attached to this Complaint as Exhibit B is a copy of an audit prepared by the Minnesota Department of Public Safety showing the accesses of Cory's driver's license information by name, not license plate number, with his driver's license number removed, and showing the "station," meaning the police department, sheriff's office, or other government entity through which the officer accessed his information.

6.      These individuals obtained Plaintiffs' private information.

7.      Upon information and belief, these individuals obtained, used, or disclosed Plaintiffs' private information.

8.      Each unauthorized, impermissible use, disclosure, or access of their private information, made while acting under color of state and federal law, violated Plaintiffs' federal civil rights and constituted behavior prohibited by the federal constitution, federal statute, Minnesota statute, common law, and agency and departmental regulations prohibiting some or all of the conduct engaged in by Defendants in this case.

9.      Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, 28 U.S.C. §§ 1331 and 1343(a)(3), the Driver's Privacy Protection Act ("DPPA") 18 U.S.C. § 2721 *et seq.*, and Minnesota common law invasion of privacy.

10.      The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

11.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12.      The amount in controversy exceeds $75,000, excluding interests and costs.

**The Parties**

13.      Jessica Leah Kampschroer is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.  Jessica uses the name "Jessica Miles" in her profession as a television news reporter.

14.      Cory Patrick Kampschroer is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

15.     Defendant Anoka County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

16.     Defendant Beltrami County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

17.     Defendant Benton County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

18.     Defendant Blue Earth County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

19.     Defendant Carver County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

20.     Defendant Cass County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

21.     Defendant Chisago County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

22.     Defendant Crow Wing County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

23.     Defendant Dakota County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

24.     Defendant Faribault County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

25.     Defendant Fillmore County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

26.     Defendant Goodhue County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

27.     Defendant Grant County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

28.     Defendant Hennepin County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

29.     Defendant Hubbard County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

30.     Defendant Isanti County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

31.     Defendant Kanabec County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

32.     Defendant Le Sueur County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

33.     Defendant McLeod County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

34.     Defendant Mille Lacs County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

35.     Defendant Morrison County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

36.     Defendant Nicollet County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

37.     Defendant Olmsted County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

38.     Defendant Pine County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

39.     Defendant Ramsey County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

40.     Defendant Rice County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

41.     Defendant Scott County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

42.     Defendant Sherburne County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

43.     Defendant Saint Louis County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

44.     Defendant Stearns County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

45.     Defendant Steele County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

46.     Defendant Wadena County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

47.     Defendant Washington County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

48.     Defendant Winona County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

49.     Defendant Wright County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

50.     Defendant Yellow Medicine County is a county in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

51.     Defendant City of Anoka is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

52.     Defendant City of Apple Valley is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

53.     Defendant City of Arlington is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

54.     Defendant City of Baxter is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

55.     Defendant City of Belle Plaine is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

56.     Defendant City of Blaine is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

57.     Defendant City of Bloomington is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

58.     Defendant City of Braham is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

59.     Defendant City of Brainerd is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

60.     Defendant City of Brooklyn Center is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

61.     Defendant City of Brooklyn Park is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

62.     Defendant City of Brownton is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

63.     Defendant City of Burnsville is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

64.     Defendant City of Cambridge is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

65.     Defendant City of Cannon Falls is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

66.     Defendant City of Champlin is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

67.     Defendant City of Chisago is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

68.     Defendant City of Chaska is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

69.     Defendant City of Columbia Heights is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

70.     Defendant City of Coon Rapids is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

71.     Defendant City of Corcoran is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

72.     Defendant City of Cottage Grove is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

73.     Defendant City of Crosby is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

74.     Defendant City of Crystal is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

75.     Defendant City of Deephaven is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

76.     Defendant City of Dundas is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

77.     Defendant City of Eagan is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

78.     Defendant City of Eden Prairie is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

79.     Defendant City of Edina is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

80.     Defendant City of Elk River is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

81.     Defendant City of Fairmont is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

82.     Defendant City of Faribault is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

83.     Defendant City of Farmington is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

84.     Defendant City of Foley is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

85.     Defendant City of Forest Lake is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

86.     Defendant City of Fridley is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

87.     Defendant City of Glencoe is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

88.     Defendant City of Golden Valley is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

89.     Defendant City of Goodview is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

90.     Defendant City of Hastings is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

91.     Defendant City of Hopkins is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

92.     Defendant City of Howard Lake is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

93.     Defendant City of Hutchinson is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

94.     Defendant City of Inver Grove Heights is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

95.     Defendant City of Isanti is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

96.     Defendant City of Jordan is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

97.     Defendant City of Lakeville is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

98.     Defendant City of Lindstrom is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

99.     Defendant City of Litchfield is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

100.     Defendant City of Mankato is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

101.     Defendant City of Maple Grove is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

102.     Defendant City of Maplewood is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

103.    Defendant City of Medina is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

104.    Defendant City of Mendota Heights is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

105.    Defendant City of Minneapolis is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

106.    Defendant City of Minnetonka is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

107.    Defendant City of Montgomery is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

108.    Defendant City of Moorhead is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

109.    Defendant City of Morristown is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

110.    Defendant City of Mounds View is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

111.    Defendant City of New Brighton is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

112.    Defendant City of New Hope is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

113.    Defendant City of Newport is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

114.    Defendant City of New Prague is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

115.    Defendant City of North Branch is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

116.    Defendant City of North Mankato is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

117.    Defendant City of Northfield is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

118.    Defendant City of North Saint Paul is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

119.    Defendant City of Owatonna is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

120.    Defendant City of Prior Lake is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

121.    Defendant City of Ramsey is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

122.    Defendant City of Richfield is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

123.    Defendant City of Robbinsdale is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

124.    Defendant City of Rochester is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

125.    Defendant City of Rosemount is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

126.    Defendant City of Roseville is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

127.    Defendant City of Sartell is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

128.    Defendant City of Savage is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

129.    Defendant City of Shakopee is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

130.    Defendant City of Spring Lake Park is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

131.    Defendant City of Saint Anthony is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

132.    Defendant City of Saint Cloud is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

133.    Defendant City of Saint Francis is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

134.    Defendant City of Saint Louis Park is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

135.    Defendant City of Saint Paul is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

136.    Defendant City of Saint Paul Park is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

137.    Defendant City of Saint Peter is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

138.    Defendant City of Staples is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

139.    Defendant City of Stillwater is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

140.    Defendant City of Waite Park is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

141.    Defendant City of Wayzata is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

142.    Defendant City of West Saint Paul is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

143.    Defendant City of White Bear Lake is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

144.    Defendant City of Woodbury is a City in Minnesota, which can be sued under Minn. Stat. § 466.01 *et seq.*

145.    All the cities and counties listed in the preceding paragraphs are "municipalities" as defined by Minn. Stat. § 466.01, subd. 1, and can be sued under Minn. Stat. § 466.01 *et seq.*

146.    Defendant Buerkle Imports Company, d/b/a Buerkle Honda ("Buerkle Honda") is a Minnesota Corporation.

147.    Defendant Rochester Motors, LLC is a Minnesota Limited Liability Company.

148.    Defendant Dakota County Communication Center is a joint powers entity created under Minn. Stat. § 471.59 *et seq.*, which can be sued under Minn. Stat. § 466.01, *et seq.*

149.    Defendant Lakes Area Police Department ("Lakes Area PD") is a joint powers entity created under Minn. Stat. § 471.59 *et seq.*, which can be sued under Minn. Stat. § 466.01, *et seq.*

150.    Defendant Centennial Lakes Police Department ("Centennial Lakes PD") is a joint powers entity created under Minn. Stat. § 471.59 *et seq.*, which can be sued under Minn. Stat. § 466.01, *et seq.*

151.    The Board of Commissioners of the Minneapolis Park and Recreation Board is an independently elected, semi-autonomous body responsible for maintaining and developing the Minneapolis Park system; the Board was created by the Minnesota Legislature in 1883 and is itself a suable entity under Minn. Stat. § 466.01 *et seq.*

152.    Defendant Metropolitan Airports Commission is a public corporation under Minn. Stat. § 473.603 *et seq.*, which can be sued under Minn. Stat. § 466.01, *et seq.*

153.    Defendants Entity Does (1-50) are various unknown municipalities as defined by Minn. Stat. § 466.01, subd. 1 that can be sued under Minn. Stat. § 466.01 *et*

*seq*. or other statutes, and federal departments and agencies, which can be sued under 28 U.S.C. § 1346 or other statutes.

154.    Plaintiffs will refer to the entities named in paragraphs 15 to 152 above, along with the Entity Does, collectively as the "Defendant Entities" or "Entity Defendants."

155.    Defendants John and Jane Does (1-1500), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting in their individual capacities as law-enforcement supervisors, officers or employees of the Defendant Entities or other federal, state, county or municipal entities in Minnesota.

156.    Plaintiffs will refer to the individual Defendants (with the exception of the "Commissioner Defendants," "Department of Public Safety Defendants" and "Supervisor Defendants" defined below), including John and Jane Does, collectively as the Individual Defendants" or "Defendant Individuals."

157.    Plaintiffs will refer to the Defendants with supervisory authority over the Individual Defendants, including any John and Jane Does with such supervisory authority, collectively as the "Defendant Supervisors" or "Supervisor Defendants."

158.    Defendant Michael Campion ("Campion"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting in his individual capacity as the Commissioner of the Minnesota Department of Public Safety.

159.     Defendant Mona Dohman ("Dohman"), upon information and belief, was, at all times material herein, a citizen, of the United States and a resident of the State of Minnesota, duly appointed and acting in her individual capacity as the Commissioner of the Minnesota Department of Public Safety.

160.     Defendant Pat McCormack ("McCormack"), upon information and belief, was, at all times material herein, a citizen, of the United States and a resident of the State of Minnesota, acting in her individual capacity as the Director of Driver and Vehicle Services for the Minnesota Department of Public Safety.

161.     Plaintiff will refer to the Defendants Campion and Dohman collectively, as the "Commissioner Defendants" or "Defendant Commissioners."

162.     Defendants DPS Does (1-30), upon information and belief, were, at all times material herein, citizens of the United States and residents of the State of Minnesota, duly appointed and acting their individual capacities as officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety.

163.     Plaintiff will refer to officers, supervisors, employees, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety who created, installed, monitored, regulated, coded, enforced, supervised, maintained, oversaw, updated, or otherwise worked on the Department of Vehicle Services' ("DVS") database or Bureau of Criminal Apprehension ("BCA") database, each of which contained Bass's private driver's license information (collectively or individually, "DPS Databases" as "Department of Public Safety Does" or "DPS Does.")

## FACTUAL ALLEGATIONS

### Jessica and Cory Kampschroer are Local Television News Reporters and Personalities

164.    Jessica has been a local Minnesota television news reporter and anchor with Channel 5 KSTP since June 2003.

165.    She presently works for "5 EYEWITNESS NEWS" as a news anchor and reporter.

166.    Cory is also employed by KSTP/5 EYEWITNESS NEWS as its digital media director, and was previously a news anchor and reporter for WCCO Radio.

167.    During their career in television news, both Jessica and Cory have met and interviewed numerous law-enforcement personnel.

### Law Enforcement Officers and Other Personnel from Entities Across Minnesota and Wisconsin Viewed Plaintiffs' Private Information Outside the Scope of Any Investigation or Official Police Business

168.    The Driver and Vehicle Services Division ("DVS") of the DPS maintains a database containing the motor vehicle records of Minnesota drivers. ("DVS Database").

169.    The DVS Database contains "personal information" and "highly restricted personal information," as defined by 18 U.S.C. § 2725 ("Private Data"), including but not limited to names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers, both current and former information dating back to the driver's first license issued in Minnesota.

170.    As early as 2003, Individual Defendants began looking up Plaintiffs' Private Data on the DVS Database.

171.    Once the Individual Defendants looked up Plaintiffs' Private Data, they gained knowledge of the contents of the Private Data.  In gaining such knowledge, the Individual Defendants obtained Plaintiffs' Private Data.

172.    Exhibits A and B, incorporated herein, reflect excerpts of an audit provided by DPS of each time Plaintiffs' Private Data was obtained or used by an Individual Defendant.

173.    Column "EsupportStationName" of Exhibits A and B, incorporated herein, reflect the department or entity which, upon information and belief, employed the Individual Defendant that obtained or used Plaintiffs' Private Data.

174.    Column "EsupportPath" of Exhibits A and B, incorporated herein, reflect the type of Private Data that was obtained or used by the Individual Defendant.

175.    Columns "AccessDay" and "AccessDate," of Exhibits A and B, incorporated herein, reflect the day of the week, date, and time when the Individual Defendant obtained or used Jessica or Cory's Private Data.

176.    DPS does not provide the name of the individual who obtained or used Plaintiffs' Private Data.

177.    Each line of Exhibits A and B, incorporated herein, reflect the audit of each time Plaintiffs' information, upon information and belief, was obtained or used by an Individual Defendant without a permissible purpose.

178.    Officers employed by Defendant Anoka County impermissibly obtained Jessica's information as reflected in Exhibit A.

179.    Officers employed by Defendant City of Apple Valley impermissibly obtained Jessica's information as reflected in Exhibit A.

180.    Officers employed by Defendant City of Arlington impermissibly obtained Jessica's information as reflected in Exhibit A, under the entity "Arlington-Green Isle PD."

181.    Officers employed by Defendant City of Baxter impermissibly obtained Jessica's information as reflected in Exhibit A.

182.    Officers employed by Defendant City of Belle Plaine impermissibly obtained Jessica's information as reflected in Exhibit A.

183.    Officers employed by Defendant Beltrami County impermissibly obtained Jessica's information as reflected in Exhibit A.

184.    Officers employed by Defendant Benton County impermissibly obtained Jessica's information as reflected in Exhibit A.

185.    Officers employed by Defendant City of Blaine impermissibly obtained Jessica's information as reflected in Exhibit A.

186.    Officers employed by Defendant City of Bloomington impermissibly obtained Jessica's information as reflected in Exhibit A.

187.    Officers employed by Defendant Blue Earth County impermissibly obtained Jessica's information as reflected in Exhibit A.

188.   Officers employed by Defendant City of Braham impermissibly obtained Jessica's information as reflected in Exhibit A.

189.   Officers employed by Defendant City of Brainerd impermissibly obtained Jessica's information as reflected in Exhibit A.

190.   Officers employed by Defendant City of Brooklyn Center impermissibly obtained Jessica's information as reflected in Exhibit A.

191.   Officers employed by Defendant City of Brooklyn Park impermissibly obtained Jessica's information as reflected in Exhibit A.

192.   Officers employed by Defendant City of Brownton impermissibly obtained Jessica's information as reflected in Exhibit A.

193.   Individuals employed by Defendant Buerkle Honda impermissibly obtained Jessica's information as reflected in Exhibit A.

194.   Officers employed by Defendant City of Burnsville impermissibly obtained Jessica's information as reflected in Exhibit A.

195.   Officers employed by Defendant City of Cambridge impermissibly obtained Jessica's information as reflected in Exhibit A.

196.   Officers employed by Defendant City of Cannon Falls impermissibly obtained Jessica's information as reflected in Exhibit A.

197.   Officers employed by Defendant Carver County impermissibly obtained Jessica's information as reflected in Exhibit A.

198.   Officers employed by Defendant Cass County impermissibly obtained Jessica's information as reflected in Exhibit A.

199.    Officers employed by Defendant Centennial Lakes PD impermissibly obtained Jessica's information as reflected in Exhibit A.

200.    Officers employed by Defendant City of Champlin impermissibly obtained Jessica's information as reflected in Exhibit A.

201.    Officers employed by Defendant City of Chaska impermissibly obtained Jessica's information as reflected in Exhibit A.

202.    Officers employed by Defendant Chisago County impermissibly obtained Jessica's information as reflected in Exhibit A.

203.    Officers employed by Defendant City of Chisago impermissibly obtained Jessica's information as reflected in Exhibit A.

204.    Officers employed by Defendant City of Columbia Heights impermissibly obtained Jessica's information as reflected in Exhibit A.

205.    Officers employed by Defendant City of Coon Rapids impermissibly obtained Jessica's information as reflected in Exhibit A.

206.    Officers employed by Defendant City of Corcoran impermissibly obtained Jessica's information as reflected in Exhibit A.

207.    Officers employed by Defendant City of Cottage Grove impermissibly obtained Jessica's information as reflected in Exhibit A.

208.    Officers employed by Defendant City of Crosby impermissibly obtained Jessica's information as reflected in Exhibit A.

209.    Officers employed by Defendant Crow Wing County impermissibly obtained Jessica's information as reflected in Exhibit A.

210.    Officers employed by Defendant City of Crystal impermissibly obtained Jessica's information as reflected in Exhibit A.

211.    Officers employed by Defendant Dakota County impermissibly obtained Jessica's information as reflected in Exhibit A.

212.    Officers employed by Defendant Dakota Communications Center impermissibly obtained Jessica's information as reflected in Exhibit A.

213.    Officers employed by Defendant City of Deephaven impermissibly obtained Jessica's information as reflected in Exhibit A.

214.    Officers employed by Defendant City of Eagan impermissibly obtained Jessica's information as reflected in Exhibit A.

215.    Officers employed by Defendant City of Eden Prairie impermissibly obtained Jessica's information as reflected in Exhibit A.

216.    Officers employed by Defendant City of Edina impermissibly obtained Jessica's information as reflected in Exhibit A.

217.    Officers employed by Defendant City of Elk River impermissibly obtained Jessica's information as reflected in Exhibit A.

218.    Officers employed by Defendant City of Fairmont impermissibly obtained Jessica's information as reflected in Exhibit A.

219.    Officers employed by Defendant Faribault County impermissibly obtained Jessica's information as reflected in Exhibit A.

220.    Officers employed by Defendant City of Faribault impermissibly obtained Jessica's information as reflected in Exhibit A.

221.    Officers employed by Defendant City of Farmington impermissibly obtained Jessica's information as reflected in Exhibit A.

222.    Officers employed by Defendant Fillmore County impermissibly obtained Jessica's information as reflected in Exhibit A.

223.    Officers employed by Defendant City of Forest Lake impermissibly obtained Jessica's information as reflected in Exhibit A.

224.    Officers employed by Defendant City of Fridley impermissibly obtained Jessica's information as reflected in Exhibit A.

225.    Officers employed by Defendant City of Glencoe impermissibly obtained Jessica's information as reflected in Exhibit A.

226.    Officers employed by Defendant City of Golden Valley impermissibly obtained Jessica's information as reflected in Exhibit A.

227.    Officers employed by Defendant Goodhue County impermissibly obtained Jessica's information as reflected in Exhibit A.

228.    Officers employed by Defendant Grant County impermissibly obtained Jessica's information as reflected in Exhibit A.

229.    Officers employed by Defendant City of Hastings impermissibly obtained Jessica's information as reflected in Exhibit A.

230.    Officers employed by Defendant Hennepin County impermissibly obtained Jessica's information as reflected in Exhibit A.

231.    Officers employed by Defendant Hennepin County Community Corrections impermissibly obtained Jessica's information as reflected in Exhibit A.

232.    Officers employed by Defendant City of Hopkins impermissibly obtained Jessica's information as reflected in Exhibit A.

233.    Officers employed by Defendant City of Howard Lake impermissibly obtained Jessica's information as reflected in Exhibit A.

234.    Officers employed by Defendant Hubbard County impermissibly obtained Jessica's information as reflected in Exhibit A.

235.    Officers employed by Defendant City of Hutchinson impermissibly obtained Jessica's information as reflected in Exhibit A.

236.    Officers employed by Defendant City of Inver Grove Heights impermissibly obtained Jessica's information as reflected in Exhibit A.

237.    Officers employed by Defendant City of Isanti impermissibly obtained Jessica's information as reflected in Exhibit A.

238.    Officers employed by Defendant Isanti County impermissibly obtained Jessica's information as reflected in Exhibit A.

239.    Officers employed by Defendant City of Jordan impermissibly obtained Jessica's information as reflected in Exhibit A.

240.    Officers employed by Defendant Kanabec County impermissibly obtained Jessica's information as reflected in Exhibit A.

241.    Officers employed by Defendant Lakes Area PD impermissibly obtained Jessica's information as reflected in Exhibit A.

242.    Officers employed by Defendant City of Lakeville impermissibly obtained Jessica's information as reflected in Exhibit A.

243.    Officers employed by Defendant City of La Sueur impermissibly obtained Jessica's information as reflected in Exhibit A.

244.    Officers employed by Defendant City of Lindstrom impermissibly obtained Jessica's information as reflected in Exhibit A.

245.    Officers employed by Defendant City of Mankato impermissibly obtained Jessica's information as reflected in Exhibit A.

246.    Officers employed by Defendant City of Maple Grove impermissibly obtained Jessica's information as reflected in Exhibit A.

247.    Officers employed by Defendant City of Maplewood impermissibly obtained Jessica's information as reflected in Exhibit A.

248.    Officers employed by Defendant McLeod County impermissibly obtained Jessica's information as reflected in Exhibit A.

249.    Officers employed by Defendant City of Medina impermissibly obtained Jessica's information as reflected in Exhibit A.

250.    Officers employed by Defendant City of Mendota Heights impermissibly obtained Jessica's information as reflected in Exhibit A.

251.    Officers employed by Defendant Mille Lacs County impermissibly obtained Jessica's information as reflected in Exhibit A.

252.    Officers employed by Defendant City of Minneapolis impermissibly obtained Jessica's information as reflected in Exhibit A.

253.    Officers employed by Defendant City of Montgomery impermissibly obtained Jessica's information as reflected in Exhibit A.

254.    Officers employed by Defendant City of Moorhead impermissibly obtained Jessica's information as reflected in Exhibit A.

255.    Officers employed by Defendant Morrison County impermissibly obtained Jessica's information as reflected in Exhibit A.

256.    Officers employed by Defendant City of Morristown impermissibly obtained Jessica's information as reflected in Exhibit A.

257.    Officers employed by Defendant City of Mounds View impermissibly obtained Jessica's information as reflected in Exhibit A.

258.    Officers employed by Defendant Minneapolis Parks Board impermissibly obtained Jessica's information as reflected in Exhibit A, under the entity "Mpls Park PD."

259.    Officers employed by Defendant City of New Brighton impermissibly obtained Jessica's information as reflected in Exhibit A.

260.    Officers employed by Defendant City of New Hope impermissibly obtained Jessica's information as reflected in Exhibit A.

261.    Officers employed by Defendant City of New Prague impermissibly obtained Jessica's information as reflected in Exhibit A.

262.    Officers employed by Defendant City of Newport impermissibly obtained Jessica's information as reflected in Exhibit A.

263.    Officers employed by Defendant Nicollet County impermissibly obtained Jessica's information as reflected in Exhibit A.

264.    Officers employed by Defendant City of North Saint Paul impermissibly obtained Jessica's information as reflected in Exhibit A.

265.    Officers employed by Defendant City of North Branch impermissibly obtained Jessica's information as reflected in Exhibit A.

266.    Officers employed by Defendant City of North Mankato impermissibly obtained Jessica's information as reflected in Exhibit A.

267.    Officers employed by Defendant City of Northfield impermissibly obtained Jessica's information as reflected in Exhibit A.

268.    Officers employed by Defendant Olmstead County impermissibly obtained Jessica's information as reflected in Exhibit A.

269.    Officers employed by Defendant City of Owatonna impermissibly obtained Jessica's information as reflected in Exhibit A.

270.    Officers employed by Defendant Pine County impermissibly obtained Jessica's information as reflected in Exhibit A.

271.    Officers employed by Defendant City of Prior Lake impermissibly obtained Jessica's information as reflected in Exhibit A.

272.    Officers employed by Defendant Ramsey County impermissibly obtained Jessica's information as reflected in Exhibit A.

273.    Officers employed by Defendant Ramsey County Corrections impermissibly obtained Jessica's information as reflected in Exhibit A.

274.    Officers employed by Defendant Rice County impermissibly obtained Jessica's information as reflected in Exhibit A.

275.    Officers employed by Defendant City of Richfield impermissibly obtained Jessica's information as reflected in Exhibit A.

276.    Officers employed by Defendant City of Robbinsdale impermissibly obtained Jessica's information as reflected in Exhibit A.

277.    Officers employed by Defendant City of Rochester impermissibly obtained Jessica's information as reflected in Exhibit A.

278.    Officers employed by Defendant City of Rosemount impermissibly obtained Jessica's information as reflected in Exhibit A.

279.    Officers employed by Defendant City of Roseville impermissibly obtained Jessica's information as reflected in Exhibit A.

280.    Officers employed by Defendant City of Sartell impermissibly obtained Jessica's information as reflected in Exhibit A.

281.    Officers employed by Defendant City of Savage impermissibly obtained Jessica's information as reflected in Exhibit A.

282.    Officers employed by Defendant Scott County impermissibly obtained Jessica's information as reflected in Exhibit A.

283.    Officers employed by Defendant City of Shakopee impermissibly obtained Jessica's information as reflected in Exhibit A.

284.    Officers employed by Defendant Sherburne County impermissibly obtained Jessica's information as reflected in Exhibit A.

285.    Employees employed by Defendant Smith Automobile Group impermissibly obtained Jessica's information as reflected in Exhibit A.

286.    Officers employed by Defendant City of Spring Lake Park impermissibly obtained Jessica's information as reflected in Exhibit A.

287.    Officers employed by Defendant City of Saint Anthony impermissibly obtained Jessica's information as reflected in Exhibit A.

288.    Officers employed by Defendant City of Saint Cloud impermissibly obtained Jessica's information as reflected in Exhibit A.

289.    Officers employed by Defendant City of Saint Francis impermissibly obtained Jessica's information as reflected in Exhibit A.

290.    Officers employed by Defendant Saint Louis County impermissibly obtained Jessica's information as reflected in Exhibit A.

291.    Officers employed by Defendant City of Saint Louis Park impermissibly obtained Jessica's information as reflected in Exhibit A.

292.    Officers employed by Defendant City of Saint Paul Park impermissibly obtained Jessica's information as reflected in Exhibit A.

293.    Officers employed by Defendant City of Saint Paul impermissibly obtained Jessica's information as reflected in Exhibit A.

294.    Officers employed by Defendant City of Saint Peter impermissibly obtained Jessica's information as reflected in Exhibit A.

295.    Officers employed by Defendant City of Staples impermissibly obtained Jessica's information as reflected in Exhibit A.

296.    Officers employed by Defendant Stearns County impermissibly obtained Jessica's information as reflected in Exhibit A.

297.    Officers employed by Defendant Steele County impermissibly obtained Jessica's information as reflected in Exhibit A.

298.    Officers employed by Defendant City of Stillwater impermissibly obtained Jessica's information as reflected in Exhibit A.

299.    Officers employed by Defendant City of West Saint Paul impermissibly obtained Jessica's information as reflected in Exhibit A.

300.    Officers employed by Defendant Wadena County impermissibly obtained Jessica's information as reflected in Exhibit A.

301.    Officers employed by Defendant City of Waite Park impermissibly obtained Jessica's information as reflected in Exhibit A.

302.    Officers employed by Defendant Washington County impermissibly obtained Jessica's information as reflected in Exhibit A.

303.    Officers employed by Defendant City of Wayzata impermissibly obtained Jessica's information as reflected in Exhibit A.

304.    Officers employed by Defendant City of White Bear Lake impermissibly obtained Jessica's information as reflected in Exhibit A.

305.    Officers employed by Defendant Winona County impermissibly obtained Jessica's information as reflected in Exhibit A.

306.    Officers employed by Defendant City of Woodbury impermissibly obtained Jessica's information as reflected in Exhibit A.

307.    Officers employed by Defendant Wright County impermissibly obtained Jessica's information as reflected in Exhibit A.

308.    Officers employed by Defendant Yellow Medicine County impermissibly obtained Jessica's information as reflected in Exhibit A.

309.    Officers employed by Defendant City of Blaine impermissibly obtained Cory's information as reflected in Exhibit B.

310.    Officers employed by Defendant City of Bloomington impermissibly obtained Cory's information as reflected in Exhibit B.

311.    Officers employed by Defendant City of Brooklyn Park impermissibly obtained Cory's information as reflected in Exhibit B.

312.    Officers employed by Defendant City of Coon Rapids impermissibly obtained Cory's information as reflected in Exhibit B.

313.    Officers employed by Defendant Crow Wing County impermissibly obtained Cory's information as reflected in Exhibit B.

314.    Officers employed by Defendant Dakota Communications Center impermissibly obtained Cory's information as reflected in Exhibit B.

315.    Officers employed by Defendant City of Dundas impermissibly obtained Cory's information as reflected in Exhibit B.

316.    Officers employed by Defendant City of Eden Prairie impermissibly obtained Cory's information as reflected in Exhibit B.

317.    Officers employed by Defendant City of Farmington impermissibly obtained Cory's information as reflected in Exhibit B.

318.    Officers employed by Defendant City of Foley impermissibly obtained Cory's information as reflected in Exhibit B.

319.    Officers employed by Defendant City of Forest Lake impermissibly obtained Cory's information as reflected in Exhibit B.

320.    Officers employed by Defendant City of Goodview impermissibly obtained Cory's information as reflected in Exhibit B.

321.    Officers employed by Defendant City of Litchfield impermissibly obtained Cory's information as reflected in Exhibit B.

322.    Officers employed by Defendant City of Maple Grove impermissibly obtained Cory's information as reflected in Exhibit B.

323.    Officers employed by Defendant City of Mendota Heights impermissibly obtained Cory's information as reflected in Exhibit B.

324.    Officers employed by Defendant City of Minneapolis impermissibly obtained Cory's information as reflected in Exhibit B.

325.    Officers employed by Defendant Minneapolis Parks Police Department impermissibly obtained Cory's information as reflected in Exhibit B, under the entity "Mpls Park PD."

326.    Officers employed by Defendant City of Prior Lake impermissibly obtained Cory's information as reflected in Exhibit B.

327.    Officers employed by Defendant City of Ramsey impermissibly obtained Cory's information as reflected in Exhibit B.

328.    Officers employed by Defendant City of Richfield impermissibly obtained Cory's information as reflected in Exhibit B.

329.    Officers employed by Defendant City of Robbinsdale impermissibly obtained Cory's information as reflected in Exhibit B.

330.    Employees employed by Defendant Rochester Motors, LLC impermissibly obtained Cory's information as reflected in Exhibit B.

331.    Officers employed by Defendant City of Roseville impermissibly obtained Cory's information as reflected in Exhibit B.

332.    Officers employed by Defendant City of Saint Anthony impermissibly obtained Cory's information as reflected in Exhibit B.

333.    Officers employed by Defendant City of Waite Park impermissibly obtained Cory's information as reflected in Exhibit B.

334.    Officers employed by Defendant City of Woodbury impermissibly obtained Cory's information as reflected in Exhibit B.

335.    Officers employed by Defendant Wright County impermissibly obtained Cory's information as reflected in Exhibit B.

336.    Officers employed by the Entity Defendants, along with those Individual Defendants currently identified as John and Jane Does, obtained or used Jessica's Private Data 1,380 times.

337.    Officers employed by the Entity Defendants, along with those Individual Defendants currently identified as John and Jane Does, obtained or used Cory's Private Data ninety-two (92) times.

338.    Each of the above accesses was committed knowingly; each of the above accesses was impermissible, meaning that the Defendants had no law-enforcement reason for accessing the information.

339.    Defendants accessed the information for personal reasons completely unrelated to their position as law-enforcement officers, public employees, or in their job functions.

340.    Individual Defendants viewed Plaintiffs' Private Data from their State-issued driver's license including their home address, color photograph or image, date of birth, eye color, height, weight, driver identification number, and upon information and belief, medical and social security information.

341.    Upon information and belief, some of the Individual Defendants from Wright County and Maple Grove Police Department used the Private Data to monitor Plaintiffs for reasons that were not related to any legitimate law-enforcement purpose.

342.    Curiosity about Plaintiffs is not a permissible purpose under the DPPA.

343.    Under the direction of the Commissioner Defendants, DPS and DPS Does, knowingly created the DVS Database that includes Plaintiffs' Private Data and the system for law-enforcement personnel to access to that information.

344.    DPS, McCormack, and DPS Does, under the direction of the Commissioner Defendants, knowingly maintained and updated the DVS Database that included Plaintiffs' Private Data.

345.    DPS, McCormack, and DPS Does, under the direction of the Commissioner Defendants, knowingly provided access to the DVS Database, thereby disclosing the information, including Plaintiffs' Private Data.

346.    DPS Commissioners, McCormack, and DPS Does made the decisions for establishing, ordering the structure of, and determining the persons, agencies and individuals to whom they would disclose the database.

347.    The disclosure of information was made by providing a user account and a password without reasonably requiring or ensuring that accesses would be limited to those for a legitimate purpose.

348.    This form of disclosure was and is used not only for law enforcement personnel but other recipients who have access to the database, including non-government employees, who comprise about half of the persons who have been granted access to this database.

349.    DPS Does, McCormack, and Commissioner Defendants failed to use reasonable care in so disclosing the information in the database.

350.    DPS Does, McCormack, and Commissioner Defendants made no reasonable effort nor directed any subordinate to make any reasonable effort to require that the specified purpose of the disclosure was legitimate and would be adhered to by the person to whom the data was disclosed.

351.    DPS Does, McCormack, and Commissioner Defendants failed to reasonably ascertain or ensure that the persons to whom it was disclosed would use it permissibly.

352.    DPS Does, McCormack, and Commissioner Defendants failed to ascertain or ensure specifically that law enforcement personnel would use it permissibly, that is, for a law enforcement function.

353.    DPS Does, McCormack, and Commissioner Defendants failed to ascertain or ensure that the persons to whom it was disclosed would use it exclusively for a law enforcement function.

354.    DPS Does, McCormack, and Commissioner Defendants failed to provide reasonably adequate training in the permissible uses of the database.

355.    Disclosure of this database is a matter known to and participated in and directed by the DPS Does, McCormack, and Commissioner Defendants.

356.    To the extent the DPS Does, McCormack, and Commissioner Defendants delegated any part of their duties, they are still responsible for disclosure, and the persons to whom they may have delegated, if any, are not known to Plaintiffs and cannot be known by Plaintiffs.

357.    DPS Does, McCormack, and Commissioner Defendants failed to reasonably monitor the database through regular, random, target, or user audits to assure themselves that the ongoing disclosures were for permissible purposes and indeed they have not been.

358.    DPS, McCormack, and DPS Does, under the direction of the Commissioner Defendants, had the ability to determine that drivers' license information, including Plaintiffs' Private Data, was being accessed on multiple occasions, by multiple law-enforcement personnel from multiple law-enforcement agencies.

359.   DPS, McCormack, and DPS Does, under the direction of the Commissioner Defendants, had the ability to prevent unauthorized access to the DVS Database, including unauthorized access to Plaintiffs' Private Data.

360.   DPS, McCormack, and DPS Does, under the direction of the Commissioner Defendants, failed to prevent unauthorized access to the DVS Database, including access to Plaintiffs' Private Data.

361.   The Commissioner Defendants , McCormack, and DPS Does knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in the disclosure of Plaintiffs' Private Data.

362.   The policy of the State of Minnesota is to uphold the provisions of the law, both state and federal, and to protect and safeguard the privacy rights of the State's citizens and inhabitants, including its drivers' privacy rights, and including those rights as are required to be protected by federal law.

363.   In particular, it is the policy of the State of Minnesota, as outlined in Minn. Stat. § 171.12, subd. 7, to comply with the provisions and requirements of the DPPA.

364.   This policy is also set forth in the driver's license application and set forth in statutory language with proper citation to that federal statute.

365.   Defendant Commissioners, McCormack, and DPS Does knowingly disclosed Plaintiffs' and others' Private Data and violated state policy by devising and implementing a database, such as the DVS Database, that failed abysmally to uphold the privacy rights of Plaintiffs and others similarly situated as protected by the DPPA.

366.    This failure exposed their information to impermissible and knowing accesses by various persons, including the Defendants in this lawsuit.

367.    These acts and failures to act by the Defendant Commissioners, McCormack, and DPS Does constitute knowing disclosures of Plaintiffs' information within the meaning of the DPPA.

368.    Defendant Commissioners, McCormack, and DPS Does knowingly devised and implemented a database, and a method for using and misusing that database, that both permitted and encouraged, through the nature and monitoring of the system, accesses by law-enforcement personnel, state employees, and others that failed to comply with state policy of protecting privacy rights and complying with the DPPA.

369.    The system knowingly devised and implemented by Commissioner Defendants, McCormack, and DPS Does failed to set rules for protecting the Plaintiffs' privacy rights.

370.    This system permitted, and on information and belief still permits, the accessing of the database from personal computers.

371.    This system permitted individuals to giving out passwords to others.

372.    This system permitted, and on information and belief may still permit, the accessing of the system by persons without any accountability or even in some instances without the ability to trace the person who made the access.

373.    This system does not require reasonably adequate training on the use of the DVS database of sworn-law enforcement officers.

374.    Accordingly, the effective monitoring of the system is difficult if not impossible under the system as devised and implemented by the Commissioner Defendants, McCormack, and DPS Does, who deliberately emphasized and favored the convenience of the system by users at the expense of protecting the privacy rights of the persons whose information is in the database.

375.    This deliberate emphasis and preference for convenience to the system users over the privacy rights of the drivers was known to the Commissioner Defendants, McCormack, and the DPS Does, and was purposeful.

376.    In failing to properly implement, maintain, and monitor the DVS Database, Commissioner Defendants failed to follow Minnesota state policy.

377.    Many viable methods were and are available to prevent this illegal accessing of private information.

378.    Upon information and belief, the Commissioners, McCormack, and DPS Does actually knew that law-enforcement officers were accessing the databases for impermissible purposes.

379.    Upon information and belief, the Commissioners, McCormack, and DPS Does actually knew that law-enforcement officers were viewing Plaintiffs' Private Data.

380.    Upon information and belief, the Commissioners, McCormack, and DPS Does acquiesced, facilitated, approved or simply ignored the conduct.

381.    Even if the Commissioners, McCormack, and DPS Does had no actual knowledge of the impermissible uses of the databases they oversaw, upon information

and belief, they were reckless in their supervision of their subordinates who did operate the database.

382.    Upon information and belief, the Commissioners, McCormack, and DPS Does were negligent in supervising their subordinates who operated the databases.

383.    The information contained in the DPS database is far greater and contains more private personal information than is customarily known to non-law enforcement personnel, and includes the social security numbers of the drivers, as well as health information.

384.    These accesses are committed surreptitiously, and without the knowledge of the victims, including Plaintiffs, which knowledge is kept hidden and concealed from the victims, including Plaintiffs.

385.    There has not been a single instance of which Plaintiffs are aware involving them or anyone else where an officer has informed them that he or she has accessed their information, and officers have gone to great lengths to avoid letting Plaintiffs know they have accessed this information.

386.    The surreptitious, concealed, and hidden accesses are kept secret from the general public and from the victims, including Plaintiffs, but paradoxically, the practice is well known throughout the law-enforcement community, from top ranking officers to the lowest ranking personnel.

387.  Accessing the DVS Database without a permissible reason is a breach of confidentiality.

388.    In May 2008, Jessica received a letter from DPS that her driver's license information had been inappropriately accessed.

389.    Plaintiffs immediately contacted Pat McCormack, Director of Driver and Vehicle Services of DPS, and McCormack informed Plaintiffs that only one employee had inappropriately obtained Jessica's information, and "the department has taken the appropriate and allowable disciplinary actions necessary to address this matter with the employee."

390.    McCormack would not reveal the name of the individual who obtained Jessica's information, but revealed only that the individual was from Southern Minnesota.

391.    McCormack revealed that the "motive" was "basic curiosity."

392.    McCormack informed Jessica that inappropriate accesses were not a widespread concern.

393.    McCormack misleadingly and fraudulently insisted to Jessica that this was an isolated incident.

394.    McCormack, both verbally and in writing, informed Jessica that employee use of the information would be monitored, and DPS has "addressed and reinforced its data privacy practices with other staff."

395.    Prior to the May 2008 letter, and undisclosed and unbeknownst to Jessica, her Private Data had been accessed over 900 times.

396.    McCormack fraudulently concealed from Jessica the massive extent that law-enforcement personnel had obtained Jessica's Private Data.

397.   On June 11, 2008, Jessica received notice from TCF Bank that her bank account information had been changed and a new check card had been issued for the account.

398.   The new check card was not mailed to Jessica.

399.   Jessica had made no changes to her TCF bank information.

400.   TCF informed Plaintiffs that a person named "Jessica Miles" went into a Mankato-area TCF branch, switched the account, and was issued a new card.

401.   Based on the financial concerns, Jessica contacted McCormack regarding the financial information, but McCormack simply reassured Jessica that the incident had been addressed.

402.   Upon information and belief, the access of her private data of which she was informed by the DPS was related to the fraudulent access of her TCF bank account.

403.   McCormack's fraudulent statements that the incident was isolated and had been addressed caused Jessica not to take further action related to it.

404.   When Jessica received a letter from the Department of Natural Resources in January 2013, advising her that her information had been accessed by an individual for an impermissible purpose, this led her to question whether perhaps more officers than this one, previously disclosed person had impermissibly accessed her information.

405.   Plaintiffs contacted DPS to inquire whether law enforcement officers had been viewing their private information.

406.   On July 30, 2013, Jessica was shocked and disgusted to learn from DPS that it had determined that officers and personnel from approximately one hundred eighty

47

different departments and agencies had reviewed, and impermissibly obtained or used, her Private Data approximately 1,380 times since 2003. *See* Exhibit A.

407.    On August 12, 2013, Cory was shocked and disgusted to learn from DPS that it had determined that officers and personnel from approximately forty different departments and agencies had reviewed, and impermissibly obtained or used, his Private Data approximately 92 times since 2003. *See* Exhibit B.

408.    Before receiving these audit reports, Plaintiffs had no knowledge that their Private Data had been accessed through the DVS Database, other than the single 2008 access of which Jessica was informed, nor could they reasonably be expected to have discovered this abuse.

409.    Plaintiffs believe that even more unauthorized accesses and viewings will occur in the future if the policies of Entity Defendants and other police departments and law-enforcement agencies similarly situated are not changed to bring the actual custom and practice of these Entity Defendants and others similarly situated into compliance with their own written rules, with the rules of the Department of Public Safety, and with federal law, including the DPPA.

410.    Included in the audits were the listing of various law-enforcement and county attorney departments associated with the Defendant Entities that obtained Plaintiffs' Private Data.

411.    According to DPS, Individual Defendants used Jessica and Cory's names, not their license plate numbers, to look up their private, personal information.

412.    Individual Defendants' identities (John and Jane Does) are not presently known, and cannot be revealed pursuant to the Minnesota Government Data Practices Act.  Plaintiffs anticipate that these yet-to-be-named Individual Defendants will become known through discovery.

413.    Supervisor Defendants are not presently known.  Plaintiffs anticipate that the yet-to-be-named Supervisor Defendants who should have monitored, prevented and stopped the unauthorized accesses to Plaintiffs' information will become known through discovery.

414.    The remaining Entity Defendant identities (Entity Does) are not presently known, because not all of the entities identified by the DPS have provided sufficient information to determine if their personnel's access to the database was unauthorized.  Plaintiffs anticipate that these yet-to-be-named Entity Defendants will become known through discovery.

415.    At the relevant times for this lawsuit, the login page to the DVS website included the following admonition, or a similar admonition:

> Access to this service is for authorized personnel only conducting official business.  If you do not have the express authorization, you must exit now or face the consequences of violating Chapter 13 of the Minnesota Statutes and other laws.  Further, the State of Minnesota prohibits unauthorized access, disclosure, duplication, modification, diversion, destruction, loss, misuse, or theft of its information in accordance with the Minnesota Statutes Sections 609.87 – 609.891.
>
> DVS collects and maintains electronic access data.  This data may be used and disseminated for the purpose of evaluating electronic government services; to prevent unlawful

intrusions into government electronic systems; or as
otherwise provided by law.

416.    On information and belief, Individual Defendants' training included
admonitions against viewing Private Data for unofficial purposes.

417.    Whatever training, monitoring, or inquiry into the officers' usage of the
information systems has been adopted is woefully inadequate to ensure that access is
used properly and lawfully.

418.    On information and belief, despite this training, Defendant Entities and
Defendant Supervisors, allowed their employees, including but not limited to Individual
Defendants, to view Plaintiffs' Private Data for unlawful purposes.

419.    On information and belief, Defendant Entities, Defendant Supervisors,
McCormack, and Commissioner Defendants permitted, condoned, or acquiesced in this
illegal access to Plaintiffs' private information, and knew or should have known that it
was occurring.

420.    On information and belief, this illegal access occurs with regularity not
only of Plaintiffs' private information, but of other Minnesota drivers' private
information.

421.    Defendant Entities, Defendant Supervisors, McCormack, Defendant
Commissioners and DPS Does have lax policies or lax enforcement of these policies that
allow for these intrusions.

422.    Defendant Entities, Defendant Supervisors, McCormack, Defendant
Commissioners and DPS Does either have no viable method of or have an inadequate

method of ascertaining and controlling the illegal access to individuals' private information by their officers.

423.    The Driver's License application assures Minnesota drivers their information will be safeguarded and kept private, and the failure of Defendant Entities and Defendant Supervisors to keep this information private is a flagrant breach of a promise of confidentiality.

424.    Defendant Entities, Defendant Supervisors, Commissioner Defendants, McCormack, and DPS Does either have no viable method of or have an inadequate method of ascertaining and controlling the illegal access to individuals' private information by their officers.

425.    The extent of this illegal access is widespread and pervasive throughout departments, and is a custom and practice.

426.    The widespread practice is demonstrated by the systematic tolerance of illegal accesses.

427.    Further evidence of the custom and practice can be found in actual statements made by current officers, one of whom was quoted in a magazine article about the illegal access into previous cases involving this same breach of privacy as saying that "every single cop in the state has done this.  Chiefs on down."

428.    Further evidence is based on actual statements made by former officers, one of whom was quoted in a magazine article about illegal accesses of other individuals as saying that "[y]ou used to look up people without a second thought.  You'd look up old friends from high school or just someone you used to know."

429.    Each individual with access to the DPS Database has a password allowing that individual access to the DPS Database.

430.    Personnel can access the DPS Databases from any computer with internet access.

431.    Personnel occasionally gave other individuals their passwords, contrary to requirements.

432.    The system for accessing accountability and responsibility was and is prone to error and fails to reasonably protect drivers' private information.

433.    When Defendant personnel viewed Plaintiffs' private information, they did not do so to carry out official police functions.

434.    Plaintiffs committed no crimes or transgressions that would explain or legitimize the unauthorized access of their Private Data.

435.    The Individual Defendants obtained Plaintiffs' personal information without probable cause or reasonable suspicion to believe that Plaintiffs had engaged in any criminal activity or any activity even remotely related to criminal activity.

436.    Plaintiffs never waived the protections of the DPPA.

437.    Defendants' actions have violated the United States Constitution, the DPPA, 42 U.S.C. § 1983, and Minnesota State law.

438.    The sheer volume of the intrusions into their private lives demonstrates that law-enforcement personnel, public employees, and others are unfairly hostile and careless toward Plaintiffs' privacy and safety.

439.    As a result of these invasions of privacy, Plaintiffs have suffered emotional distress.

## THE COMMISSIONERS HAVE KNOWN ABOUT THESE VIOLATIONS

440.    DPS Commissioners Campion and Dohman have been involved with law enforcement for many years.

441.    Commissioner Dohman has been a law enforcement officer for thirty years, having formerly served as police chief of the City of Maple Grove from 2001 until her appointment as DPS Commissioner in March 2011.

442.    Before becoming Chief of Police of the Maple Grove Police Department she was an investigator, patrol officer, sergeant and captain of the Maple Grove Police Department; and prior to that time, she was a patrol officer of the City of Glencoe and of the City of Marshall, Minnesota.

443.    Dohman also served as president of the Minnesota Chiefs of Police Association.

444.    Upon information and belief, the misuse of private information is the main complaint of most police chiefs and human resources personnel.

445.    Former Commissioner Michael Campion served from July 2004 until March 2011.  Prior to his appointment as DPS Commissioner he was supervisor of the Bureau of Criminal Apprehension ("BCA"), which also maintains a driver's license database.

446.    Prior to that position, Campion was a special agent at the BCA.

447.   It was during his tenure that the DPS database was largely developed in its current format.

448.   On information and belief, misuse of the DPS database has been well-known to Commissioner Defendants.  At a Legislative Audit Subcommittee hearing in February, 2013 at which Commissioner Dohman testified, the testimony of the Legislative Auditor revealed that at least 50% of law enforcement officers are misusing the DPS database by obtaining, disclosing, and/or using the driver license personal information for an impermissible purpose.

449.   On information and belief, Commissioner Defendants knew this, and knowingly disclosed the information in part by (a) failing to safeguard and monitor the database despite knowing of its rampant misuse, (b) willfully refusing to correct the misuses, or (c) both failing to monitor and refusing to correct the abuse and misuse of the system.

450.   Experts in the field of police training report that the primary complaint of many police departments is that law enforcement personnel misuse private information. This is an established, well-known, and pervasive problem with law enforcement that Commissioner Defendants are unwilling to properly address.

### THE COMMISSIONER DEFENDANTS, MCCORMACK, AND DPS DOES COULD HAVE DONE SIGNIFICANTLY MORE TO PROTECT PLAINTIFFS' PRIVACY.

451.   On information and belief, states other than Minnesota have far greater restrictions and protections in place to protect the data on their drivers' license databases from being obtained, disclosed or used for a reason not permitted by the DPPA.

452.    For instance, on further information and belief, North Dakota requires a daily report of anyone who obtains driver photos and its system generates weekly reports listing all individuals with accesses of over 25 images a day.  These reports are sent to the North Dakota Attorney General to make inquiries as to whether the information was obtained for a job-related reason.  North Dakota also requires the users of the database to declare the reason why they were looking at the record.  North Dakota also requires its users to take a certification test before being given access to the database.

453.    Also on information and belief, the State of California's DMV cooperates with its law-enforcement agencies and California's Department of Justice to ensure access to its drivers' license information is limited to agencies that satisfy specific requirements before they are issued a confidential requester code that permits access to law-enforcement information only.  Each law-enforcement agency is responsible for limiting access to necessary personnel.  California also periodically reviews law-enforcement applications to ensure the agency and person requesting the information is still entitled to obtain the information.  During a recent audit, California's DMV reviewed questionable agencies and even reclassified some to prevent them from having further access to the database.

454.    On further information and belief, the California DMV has a dedicated law-enforcement unit to analyze data inquiries.  Each data request is logged and technicians are trained to look for developing patterns in the requester's history.  The California DMV also conducts periodic historical reviews of a specific agency's requests to determine if the accesses were authorized.  The California DMV may also require a law-

enforcement entity to supply an explanation of events, describe their protocols for accessing DMV information, what policies or access requirements were violated, what corrective or administrative steps are being taken to admonish the officer, and what steps the agency is taking to avoid future occurrences. All users annually complete an information security form. Finally, the California DMV is very restrictive on the types of information it releases.

455.    In Florida, on information and belief, the state agency runs weekly audits on high profile individuals, including, for example, high-ranking government officials. Florida also has "reason codes" that law-enforcement personnel must click on before their search can proceed.

456.    On information and belief, DPS Commissioners, DPS and Defendants Entities knew or should have known of the policies and practices of the States of North Dakota, California and Florida, but did not at time that Plaintiffs' drivers' license information was being impermissibly obtained, require any of the protections and safeguards to the Minnesota DPS Databases utilized by other states.

457.    That other states did have these safeguards and protections indicates that it would have been reasonable and feasible for DPS Commissioners, DPS and Defendants Entities to implement them.

458.    The implementation of some or all of these safeguards and protections by defendants would have prevented many of the impermissible accesses of Plaintiffs' private data.

**COUNT I: VIOLATION OF THE DPPA, 18 U.S.C. § 2721, *et seq.***

*(Against all Defendants)*

459.    Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 458.

460.    Plaintiffs provided personal information to the DPS including their address, color photographs, dates of birth, weights, heights, eye colors, social security numbers and medical information for the purpose of acquiring and utilizing a State of Minnesota driver's license.

461.    The DPS Database also maintained Plaintiffs' driving records.

462.    Plaintiffs did not provide their consent for any of Defendant Individuals to obtain, disclose or use, or for any of Defendant Entities or Defendant Supervisors to disclose or to allow Defendant Individuals to obtain, disclose or use, their private information for anything but official law-enforcement business.

463.    Knowingly obtaining, disclosing or using Private Data without an authorized, legitimate, permissible purpose is a violation of the DPPA.  The statute provides for criminal fines and civil penalties.  18 U.S.C. §§ 2723, 2724.

464.    The DPPA provides redress for violations of a person's protected interest in the privacy of their motor vehicle records and the identifying information therein.

465.    Minnesota law is to enforce and follow the DPPA and to hold all information obtained pursuant to an application for a driver's license confidential and private; even prior to the passage of the DPPA in 1994 Minnesota law pledged to hold all this information private and confidential, and on one's driver's license application these

promises of confidentiality are all made; Defendants' actions in accessing this information is a flagrant breach of that pledge of confidentiality.

466. As described above, McCormack fraudulently mislead and concealed form Jessica the extent that law-enforcement personnel obtained her Private Data.

467. McCormack's fraudulent concealment prevented Jessica from learning the extent of the impermissible access and taking action to stop it.

468. Each of the Defendants invaded Plaintiffs' legally protected interest under the DPPA.

469. According to the Department of Vehicle Services, the Individual Defendants knowingly obtained, disclosed or used Plaintiffs' personal information, from a motor vehicle record, for a purpose not permitted under the DPPA. 18 U.S.C. § 2724(a).

470. None of the Individual Defendants' activities fell within the DPPA's permitted exceptions for procurement of Plaintiffs' private information.

471. By the actions described above, each Defendant Individual was acting within the scope of his or her employment when he or she obtained, disclosed or used Plaintiffs' personal information from the DPS Databases for an impermissible purpose.

472. Individual Defendants knew that their actions related to Plaintiffs' Private Data were in violation of the DPPA.

473. Defendant Entities and Defendant Supervisors knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in obtaining, disclosing or using of Plaintiffs' private personal information by Individual Defendants.

474.   Defendant Commissioners, McCormack, Defendant Entities and Defendant Supervisors' actions constitute a knowing disclosure of the personal information of Plaintiffs under the DPPA.

475.   Individual Defendants knowingly used Defendant Entities' computers, passwords and passcodes to obtain Plaintiffs' private information.

476.   Plaintiffs' private information was obtained by each Individual Defendant for purposes that are impermissible under the DPPA.

477.   Defendant Entities are each vicariously liable for the acts of Defendant Individuals.

478.   By the actions complained of, Commissioner Defendants, McCormack, and DPS Does are jointly liable for the acts of Defendant Individuals.

479.   Plaintiffs have suffered harm because their private information has been obtained and viewed unlawfully.

480.   Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of numerous law-enforcement officers, public employees, and others who obtained it without a legitimate purpose.

481.   Plaintiffs have further suffered harm because their private information has been obtained unlawfully.  Plaintiffs suffered and continue to suffer harm by virtue of the increased risk that their protected information is in the possession of Individual Defendants who obtained it without a legitimate purpose.

482.   This is precisely the harm Congress sought to prevent by enacting the DPPA and its statutory remedies.

483.   Individual Defendants, Supervisor Defendants, McCormack, and Commissioner Defendants each willfully and recklessly disregarded the law, entitling Plaintiffs to punitive damages under the DPPA, see 18 U.S.C. § 2724(b)(2), which is not subject to the pleading requirement of Minnesota state law as set forth in Minn. Stat. § 549.20.  Plaintiffs are entitled to actual damages, punitive damages, reasonable attorneys' fees and other litigation costs reasonably incurred, and such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).

484.   In addition, under the DPPA, Plaintiffs are entitled to a baseline liquidated damages award of at least $2,500 for each violation of the DPPA.  18 U.S.C. § 2721(b)(1).  Plaintiffs need not prove actual damages to receive said liquidated damages.

## COUNT II: VIOLATION OF 42 U.S.C. § 1983

*(Against All Individual Defendants Including Jane and John Does)*

485.   Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 484.

486.   The Fourth Amendment to the Constitution of the United States provides for the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

487.   The Fourteenth Amendment provides all individuals in the United States with a substantive due process right of privacy.

488.   The Fourth Amendment to the Constitution of the United States establishes a well-settled civil right to be free from an unconstitutional search.

489.   At no time did Plaintiffs behave in a manner that would provide any legal justification for the above-described invasion of their privacy.

490.   The DPPA establishes that obtaining an individual's Private Data without a legitimate purpose constitutes an illegal search under the meaning of the Fourth Amendment as well as a violation of their substantive due process right to privacy under the Fourteenth Amendment.

491.   The DPPA, among other things, such as the plain language of the Constitution, the various court decisions interpreting the Constitution and the traditions of our country establish that an individual has a reasonable expectation of privacy in their driver's license information.

492.   Individual Defendants' viewing of Plaintiffs' personal information was unauthorized, unjustified, and excessive, and violates the Fourth and Fourteenth Amendments, the laws of the United States and the laws of the State of Minnesota.

493.   By the actions described above, each Individual Defendant, acting under color of state and federal law, violated and deprived Plaintiffs of their Fourth and Fourteenth Amendment Rights.

494.   Individual Defendants used the Entity Defendants' computers, passwords and passcodes to obtain Plaintiffs' Private Data.

495.   The acts of each Individual Defendant, acting under the color of state and federal law, constituted an invasion or repeated invasions of Plaintiffs' clearly-established privacy rights, guaranteed by the Bill of Rights and the Fourteenth Amendment to the United States Constitution, the laws of the United States, including the DPPA, and the laws of the State of Minnesota.

496.   The DPPA protects and codifies an individual right to privacy in a person's Private Data, thereby prohibiting unauthorized accessing of all persons' information, including Plaintiffs' information.

497.   Each individual law-enforcement and other government personnel, acting under color of state and federal law, knew that his or her actions violated and deprived Plaintiffs of their clearly established statutory rights under the DPPA.

498.   Each Individual Defendant deprived Plaintiffs of their federal statutory rights and civil rights maliciously or by acting with reckless disregard for whether Plaintiffs' rights would be violated by his or her actions.

499.   Each Individual Defendant was deliberately indifferent to Plaintiffs' statutory and civil right to be free from illegal searches, invasions of privacy and the unauthorized accessing of their Private Data.

500.   As a direct and proximate result of the acts and omissions of the above-named Individual Defendants, Plaintiffs were damaged in an amount yet to determined, but in excess of $75,000.

501.   Punitive damages are available against Individual Defendants for their reckless and callous disregard for Plaintiffs' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirement for punitive damages set forth in Minn. Stat. § 549.20.

502.   Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT III: VIOLATION OF 42 U.S.C. § 1983

*(Against Entity Defendants and Supervisor Defendants, including John, Jane and Entity Does, for violation of 42 U.S.C. § 1983, but not Buerkle Honda or Rochester Motors, LLC)*

503.    Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through Paragraph 502.

504.    Individual Defendants' numerous accesses of Plaintiffs' private information are not unique, but one example of how frequently such law-enforcement agencies and other governmental entities customarily violate the DPPA by accessing Private Data of persons without having any legitimate or permissible reason for doing so.

505.    Persons familiar with police departments and those involved in teaching supervisors how to train and hold accountable their subordinate law-enforcement personnel have been told by those supervisors that the unlawful and impermissible accessing of private information is among the most frequently committed wrongs by police, for which they are seldom if ever held accountable.

506.    Improper access of citizens' Private Data by Defendants for their own personal and private uses, obtained by accessing that information through the computerized information storage system kept by the State for official purposes only, is an official custom or practice well known to Defendant Supervisors and Commissioner Defendants.

507.    These customs and practices by Defendant Individuals are at variance with the written rules set down by the Entity Defendants, the DPS, and Commissioner Defendants, but these formal rules are widely and knowingly disregarded.

508.     Given Entity Defendants' failure to monitor and enforce their rules, the aforementioned customs and practices are attributable to the municipalities themselves, including the Entity Defendants herein.

509.     Defendant Entities and Defendant Supervisors of the law-enforcement personnel and other public employees accessing this information knew or should have known of this and other unlawful, improper, unjustified, and impermissible access to private information by law-enforcement personnel and other public employees.

510.     The prevalence of this custom, the lack of monitoring regarding these access practices and the failure to take action to stop or prevent these practices, demonstrate the state of mind of Defendant Supervisors and municipal officials of the Entity Defendants.

511.     These customs and practices further demonstrate Defendants' deliberate indifference to the federal statutory and constitutional rights of the citizens and persons, including Plaintiffs, whose information has been wrongfully accessed.

512.     Defendant Entities are directly liable for the custom and practice of the widespread illegal access of citizens' Private Data.

513.     Supervisor Defendants, up to and including the chief police officers and sheriffs employed by each Entity Defendant, are liable in their individual capacity.

514.     Defendants' liability is due to their actual and constructive knowledge of this practice.

515.     Defendants' liability is also due to their failure to institute any process for monitoring and preventing it.

516.    Defendants' liability is also due to their deliberate indifference to the federal rights of those persons, including Plaintiffs, whose information has been and continues to be wrongfully accessed.

517.    In addition, Defendant Supervisors of the law-enforcement personnel and other public employees, up to and including the chief police officer in each of Defendant Entities, are liable in their individual capacities for the failure to train, monitor, supervise, and properly discipline the officers who are improperly and unlawfully accessing the Private Data of citizens, including Plaintiffs, without a proper, lawful, permissible, justifiable purpose for doing so.

518.    This pattern of failure to train, monitor, supervise, and discipline demonstrates the state of mind of these Defendant Supervisors and a deliberate indifference to the rights of the citizens and others whose information has been so widely accessed, including Plaintiffs.

519.    The federal rights of the citizens, including Plaintiffs, whose information was improperly accessed, are held in light regard by many if not most of the Defendant Supervisors and by the Defendant Entities themselves.

520.    Defendants' lack of concern evidences their deliberate indifference both to the problem of the unauthorized access and to the impact of the unauthorized access on the federal rights of the citizens, including Plaintiffs, who would often be unaware of that access.

521.     It is yet unknown whether a system has been established by the Entity Defendants and Supervisor Defendants to monitor the regular access of the DPS Databases by personnel.

522.     It is yet unknown whether any attempt has been made by Entity Defendants and Supervisor Defendants to provide redress and assurance to the persons, including Plaintiffs, whose DVS information has been wrongfully accessed by the Individual Defendants named in this Complaint, or by other personnel in the municipalities named in this Complaint.

523.     As a direct and proximate result of the acts and omissions of the above-named Defendant Entities and Defendant Supervisors, Plaintiffs have endured and continue to endure mental suffering, and have been damaged in an amount yet to be determined and of a continuing nature, but in an amount in excess of $75,000.

524.     Punitive damages are available against Defendant Supervisors for their reckless and callous disregard for Plaintiffs' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, <u>Smith v. Wade</u>, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

525.     Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1983

*(Against Commissioner Defendants, McCormack, and DPS Does)*

526.     Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 525.

527.    As DPS Commissioners, Campion and Dohman, along with McCormack and DPS Does, were and are responsible for creating, maintaining, and providing access to the database that included Plaintiffs' Private Data.

528.    Defendant Commissioners, McCormack, and DPS Does also had the ability to determine if unauthorized access was being made and to prevent such unauthorized access to the database, including of Plaintiffs' Private Data, and have the ongoing duty to prevent such unauthorized accesses.

529.    Defendant Commissioners, McCormack, and DPS Does failed to utilize any due care to ensure that the disclosed information was being used only for permissible purposes.

530.    Commissioner Defendants, McCormack, and DPS Does failed to prevent unauthorized access to the database, including Plaintiffs' Private Data.

531.    The actions of Commissioner Defendants, McCormack, and DPS Does, as alleged, violate the rights of the Plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution and under the DPPA.

532.    On information and belief, Commissioner Defendants, McCormack, and DPS Does created or oversaw the creation and maintenance of a database and system that was supposed to prevent unauthorized access to Private Data.

533.    From 2003, Commissioner Defendants, McCormack, and DPS Does allowed unauthorized access of Plaintiffs Private Data such hundreds of personnel from accessed Jessica's information about 1,380 times and Cory's information about 92 times.

534.    As described in this Complaint, McCormack fraudulently misled and concealed to Jessica the extent that law-enforcement personnel obtained her Private Data.

535.    McCormack's fraudulent concealment prevented Jessica from learning the extent of the impermissible access and taking action to stop it.

536.    On information and belief, Commissioner Defendants', McCormack's and DPS Does' efforts have been insufficient to prevent future unauthorized access of Plaintiffs' and other individuals' private, personal information.

537.    Commissioner Defendants, McCormack, and DPS Does have sanctioned the constitutional violations by the Individual Defendants through their failure to remedy the policy, custom and practice of officers' and employees' unfettered and unauthorized access to the database.

538.    Commissioner Defendants, McCormack, and DPS Does have been negligent in supervising subordinates responsible for implementing a law-enforcement database that prevents unauthorized access to private, personal information.

539.    On information and belief, Commissioner Defendants, McCormack, and DPS Does failed to monitor and prevent unauthorized access to private, personal information even though they knew or should have known that such unconstitutional acts were occurring.

540.    Commissioner Defendants, McCormack, and DPS Does, acting under the color of state law, were deliberately indifferent to Plaintiffs' constitutionally-recognized and federal statutory rights to be free from illegal searches, invasions of privacy and the unauthorized accessing of her Private Data.

541.   Commissioner Defendants, McCormack, and DPS Does failed to implement properly Minnesota's policy to protect the private, personal information of its citizens with drivers' licenses.

542.   Commissioner Defendants, McCormack, and DPS Does are jointly liable for the use, disclosure, or access of Plaintiffs' Private Data for each Individual Defendants' access.

543.   As a direct and proximate result of the acts and omissions of Commissioner Defendants and DPS Does, Plaintiffs were forced to endure physical and mental suffering, and were thereby damaged in an amount yet to determined, but in an amount in excess of $75,000.

544.   Punitive damages are available against Commissioner Defendants and DPS Does for their reckless and callous disregard for Plaintiffs' rights and their intentional violations of the federal law, and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements set forth in Minn. Stat. § 549.20.

545.   Plaintiffs are entitled to recovery of their costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

## COUNT IV: COMMON LAW INVASION OF PRIVACY

*(Against All Defendants)*

546.    Plaintiffs reaffirm and reallege the allegations in Paragraphs 1 through 545.

547.    By improperly obtaining Plaintiffs' private personal information for impermissible reasons, Defendants intentionally intruded upon the solitude or seclusion of Plaintiffs' private affairs and concerns.

548.    Defendants' intrusions would be highly offensive to a reasonable person.

549.    Defendants' intrusions caused Plaintiffs to suffer severe emotional distress and physical harm.

550.    Defendants' intrusions were intended to cause Plaintiffs to suffer severe emotional distress and physical harm, and were made with either actual or legal malice, or with reckless disregard of their rights and their privacy.

551.    Plaintiffs are entitled to tort damages for Defendants' invasion of privacy.

## JURY DEMAND

552.    Plaintiffs demand a jury trial as to all issues of fact herein properly triable to a jury under any statute or under common law.

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1.    A money judgment against all Defendants for liquidated, actual and compensatory damages in an amount in excess of seventy five thousand ($75,000) dollars and punitive damages in an amount to be determined by the jury, together with their costs, including reasonable attorney fees, under 42 U.S.C. § 1988, the DPPA, and other applicable laws, and prejudgment interest;

2.      Actual damages, punitive damages, attorneys' fees and other litigation costs and such other preliminary and equitable relief as the court determines to be appropriate under 18 U.S.C. § 2724(b);

3.      Liquidated damages of at least $2,500 for each violation of the DPPA under 18 U.S.C. § 2721(b)(1);

4.      An injunction, permanently enjoining all Defendants from viewing Plaintiffs' private information in violation of the DPPA, unless necessary for law enforcement purposes;

5.      An injunction, permanently and prospectively requiring Defendants to establish and implement all effective monitoring and investigative procedures to end this practice, discover and suspend permanently all accessing privileges to the violators; and to provide full disclosure to all potential claimants of the entities and persons who have violated their rights under the DPPA and the Constitution; and,

6.      For such other and further relief as this Court deems just and equitable.


                                        **SAPIENTIA LAW GROUP PLLC**

Dated:  September 15, 2013              s/ Kenneth H. Fukuda
                                        Jonathan A. Strauss (#0279602)
                                        Lorenz F. Fett (#196769)
                                        Sonia Miller-Van Oort (#278087)
                                        Kenn H. Fukuda (#0389301)
                                        12 South Sixth Street, Suite 1242
                                        Minneapolis, MN  55402
                                        (612) 756-7100, Fax: 612-756-7101
                                        jons@sapientialaw.com
                                        larryf@sapientialaw.com
                                        soniamv@sapientialaw.com
                                        kennf@sapientialaw.com