# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jessica Leah Kampschroer and Cory Patrick Kampschroer, | Case No. 13-cv-2512 (SRN/TNL) |
| Plaintiffs, | |
| v. | **AMENDED MEMORANDUM OPINION AND ORDER** |
| Anoka County; City of Anoka; City of Apple Valley; City of Arlington; City of Baxter; City of Belle Plaine; Beltrami County; Benton County; City of Blaine; City of Bloomington; Blue Earth County; City of Braham; City of Brooklyn Center; City of Brooklyn Park; City of Brownton; City of Burnsville; City of Cambridge; City of Cannon Falls; Carver County; Cass County; Centennial Lakes Police Department; City of Champlin; City of Chaska; Chisago County; City of Columbia Heights; City of Coon Rapids; City of Corcoran; City of Cottage Grove; City of Crosby; Crow Wing County; City of Crystal; Dakota Communications Center; Dakota County; City of Deephaven; City of Dundas; City of Eagan; City of Eden Prairie; City of Edina; City of Elk River; City of Fairmont; Faribault County; City of Faribault; City of Farmington; Fillmore County; City of Foley; City of Forest Lake; City of Fridley; City of Glencoe; City of Golden Valley; Goodhue County; City of Goodview; Grant County; City of Hastings; Hennepin County; City of Hopkins; City of Howard Lake; Hubbard County; City of | |

Hutchinson; City of Inver Grove Heights;
City of Isanti; Isanti County; City of
Jordan; Kanabec County; Lakes Area
Police Department; City of Lakeville; Le
Sueur County; City of Litchfield; City of
Mankato; City of Maple Grove; City of
Maplewood; McLeod County; City of
Medina; City of Mendota Heights;
Metropolitan Council; Mille Lacs County;
City of Minneapolis; City of Minnetonka;
City of Montgomery; City of Moorhead;
Morrison County; City of Morristown; City
of Mounds View; Minneapolis Parks and
Recreation Board; Metropolitan Airports
Commission; City of New Brighton; City
of New Hope; City of New Prague; City of
Newport; Nicollet County; City of North
Saint Paul; City of North Mankato; City of
Northfield; Olmsted County; City of
Owatonna; Pine County; City of Prior
Lake; Ramsey County; City of Ramsey;
Rice County; City of Richfield; City of
Robbinsdale; City of Rochester; Rochester
Motors, LLC; City of Rosemount; City of
Roseville; City of Sartell; City of Savage;
Scott County; City of Shakopee; Sherburne
County; City of Spring Lake Park; City of
Saint Anthony; City of Saint Cloud; City of
Saint Francis; Saint Louis County; City of
Saint Louis Park; City of Saint Paul; City
of Saint Paul Park; City of Saint Peter; City
of Staples; Stearns County; Steele County;
City of Stillwater; City of West Saint Paul;
Wadena County; City of Waite Park;
Washington County; City of Wayzata; City
of White Bear Lake; Winona County; City
of Woodbury; Wright County; Yellow

Medicine County; Pat McCormack in her
individual capacity as the Director of
Driver and Vehicle Services at the
Minnesota Department of Public Safety;
Michael Campion, in his individual
capacity as the Commissioner of the
Department of Public Safety; Ramona
Dohman, in her individual capacity as the
Commissioner of the Department of Public
Safety; DPS Does; John and Jane Does (1-
1500) acting in their individual capacity as
supervisors, officers, deputies, staff,
investigators, employees or agents of the
other governmental agencies; and Entity
Does (1-50) including cities, counties,
municipalities, and other entities sited in
Minnesota and federal departments and
agencies,

        Defendants.

Jonathan A. Strauss, Lorenz F. Fett, Jr., Mark H. Zitzewitz, Sonia L. Miller-Van Oort,
Kenneth H. Fukuda, Sapientia Law Group PLLC, 12 South Sixth Street, Suite 1242,
Minneapolis, MN 55402; Jeffrey M. Montpetit and Susan M. Holden, Sieben Grose Von
Holtum & Carey, Ltd., 901 Marquette Avenue, Suite 500, Minneapolis, MN 55402, for
Plaintiffs.

Bryan D. Frantz, Anoka County Attorney's Office, 2100 Third Avenue, Anoka, MN
55303; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321
Ensign Avenue South, Bloomington, MN 55438, for Defendant Anoka County.

John K. Iverson, Stephanie A. Angolkar, and Susan M. Tindal, Iverson Reuvers Condon,
9321 Ensign Avenue South, Bloomington, MN 55438, for Defendants City of Anoka,
City of Apple Valley, City of Arlington, City of Baxter, City of Belle Plaine, City of
Blaine, City of Bloomington, City of Braham, City of Brooklyn Center, City of Brooklyn
Park, City of Brownton, City of Burnsville, City of Cambridge, City of Cannon Falls,
Centennial Lakes Police Department, City of Champlin, City of Chaska, City of Chisago,
City of Columbia Heights, City of Corcoran, City of Cottage Grove, City of Crosby, City
of Crystal, City of Deephaven, City of Dundas, City of Eagan, City of Eden Prairie, City

of Elk River, City of Fairmont, City of Faribault, City of Farmington, City of Foley, City
of Forest Lake, City of Fridley, City of Glencoe, City of Golden Valley, City of
Goodview, City of Hastings, City of Hopkins, City of Howard Lake, City of Hutchinson,
City of Inver Grove Heights, City of Isanti, City of Jordan, City of Lakeville, City of
Litchfield, City of Mankato, City of Maple Grove, City of Maplewood, City of Medina,
City of Minnetonka, City of Montgomery, City of Moorhead, City of Morristown, City of
Mounds View, City of New Brighton, City of New Hope, City of New Prague, City of
Newport, City of North Saint Paul, City of North Mankato, City of Northfield, City of
Owatonna, City of Prior Lake, City of Ramsey, City of Richfield, City of Robbinsdale,
City of Rochester, City of Rosemount, City of Roseville, City of Sartell, City of Savage,
City of Shakopee, City of Spring Lake Park, City of Saint Cloud, City of Saint Louis
Park, City of Staples, City of Stillwater, City of West Saint Paul, City of Waite Park, City
of Wayzata, City of White Bear Lake, City of Woodbury, City of Coon Rapids, Dakota
Communications Center, City of Mendota Heights, City of Saint Anthony, City of Saint
Francis, City of Saint Paul Park, and City of Saint Peter.

Jamie L. Guderian and Joseph E. Flynn, Jardine Logan & O'Brien PLLP, 8519 Eagle
Point Boulevard, Suite 100, Lake Elmo, MN 55042; Stephanie A. Angolkar and Susan
M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN
55438, for Defendants Beltrami County, Benton County, Blue Earth County, Carver
County, Cass County, Chisago County, Crow Wing County, Faribault County, Fillmore
County, Goodhue County, Grant County, Hubbard County, Isanti County, Kanabec
County, Lakes Area Police Department, Le Sueur County, McLeod County, Mille Lacs
County, Morrison County, Nicollet County, Rice County, Scott County, Sherburne
County, Stearns County, Steele County, Wadena County, Washington County, Winona
County, Wright County, Yellow Medicine County, and Pine County.

Amelia N. Jadoo, Helen R. Brosnahan, and Andrea G. White, Dakota County Attorney's
Office, 1560 Highway 55, Hastings, MN 55033; Stephanie A. Angolkar and Susan M.
Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438,
for Defendant Dakota County.

Mark P. Hodkinson, Bassford Remele, PA, 33 South Sixth Street, Suite 3800,
Minneapolis, MN 55402; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers
Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant City of
Edina.

Toni A. Beitz, Beth A. Stack, and Daniel D. Kaczor, Hennepin County Attorney's Office,
2000A Government Center, 300 South Sixth Street, Minneapolis, MN 55487; Stephanie
A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South,
Bloomington, MN 55438, for Defendant Hennepin County.

C. Lynne Fundingsland and Kristin R. Sarff, Minneapolis City Attorney's Office, 350

South Fifth Street, Room 210, Minneapolis, MN 55415; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant City of Minneapolis.

Ann E. Walther, Daniel A. Louismet, and Karin E. Peterson, Rice Michels & Walther LLP, 10 Second Street Northeast, Suite 206, Minneapolis, MN 55413; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Minneapolis Park & Recreation Board.

Timothy R. Schupp and Ryan O. Vettleson, Gaskins, Bennett, Birrell, Schupp, LLP, 333 South Seventh Street, Suite 3000, Minneapolis, MN 55402; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Metropolitan Airports Commission.

Douglas A. Boese, Gregory J. Griffiths, and Jennifer Marie Peterson, Dunlap & Seeger, PA, P.O. Box 549, Rochester, MN 55903; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Olmstead County.

Kimberly R. Parker and Robert B. Roche, Ramsey County Attorney's Office, 121 Seventh Place East, Suite 4500, Saint Paul, MN 55101; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Ramsey County.

Charles K. Maier, Gray Plant Mooty, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402; Todd L. Nissen, Drawe & Maland, 7701 France Avenue, Suite 240, Edina, MN 55435; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Rochester Motors LLC.

Nick D. Campanario, Saint Louis County Attorney's Office, 100 North Fifth Avenue West, Room 501, Duluth, MN 55802; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Saint Louis County.

Cheri M. Sisk, City of Saint Paul Attorney's Office, 15 West Kellogg Boulevard, 750 City Hall and Courthouse, Saint Paul, MN 55102; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant City of Saint Paul.

Oliver J. Larson, Minnesota Attorney General's Office, Suite 1800, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for

Defendants Michael Campion, Ramona Dohman, and Pat McCormack.

Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendants John and Jane Doe (1-1500), Entity Does (1-50), and DPS Does.

Daniel L. Abelson, Metropolitan Council, 390 Robert Street North, Saint Paul, MN 55101; Stephanie A. Angolkar and Susan M. Tindal, Iverson Reuvers Condon, 9321 Ensign Avenue South, Bloomington, MN 55438, for Defendant Metropolitan Council.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on the following motions: (1) Defendants Michael Campion, Ramona Dohman, and Pat McCormack's Motion to Dismiss [Doc. No. 54] and Supplemental Motion to Dismiss [Doc. No. 131]; (2) Defendant Rochester Motors' Motion to Dismiss [Doc. No. 76]; (3) Defendant Metropolitan Council's Motion to Dismiss or Sever [Doc. No. 104]; (4) Defendant Minneapolis Park and Recreation Board's Motion to Dismiss or Sever [Doc. No. 138]; (5) Defendant Metropolitan Airports Commission's Motion to Dismiss or Sever [Doc. No. 141]; (6) Defendant Ramsey County's Motion to Dismiss or Sever [Doc. No. 88]; (7) Defendant Anoka County's Motion to Dismiss [Doc. No. 93]; (8) Defendant Hennepin County's Motion to Dismiss or Sever [Doc. No. 99]; (9) Defendant Olmstead County's Motion to Dismiss or Sever [Doc. No. 110]; (10) Defendant Dakota County's Motion to Dismiss [Doc. No. 116]; (11) all other County Defendants' Motion to Dismiss or Sever [Doc. No. 155]; (12) Defendant Saint Louis County's Motion for Judgment on the Pleadings [Doc. No. 164]; (13) Defendant City of Edina's Motion to Dismiss [Doc. No. 121]; (14) Defendant City of

Saint Paul's Motion to Dismiss or Sever [Doc. No. 126]; (15) Defendant City of Minneapolis's Motion to Dismiss or Sever [Doc. No. 151]; and (16) Motion to Dismiss or Sever by all other City Defendants, Centennial Lakes Police Department, Dakota Communications Center, and Lakes Area Police Department [Doc. No. 130]. For the reasons set forth below, the Court denies in part and grants in part these motions.

## II.    BACKGROUND

The Driver and Vehicle Services Division ("DVS") of the Minnesota Department of Public Safety ("DPS") maintains a database containing the motor vehicle records of Minnesota drivers ("DVS Database"). (Second Am. Compl. ¶ 169 [Doc. No. 20].) The DVS Database contains personal information, including "names, dates of birth, driver's license numbers, addresses, driver's license photos, weights, heights, social security numbers, various health and disability information, and eye colors of Minnesota drivers." (Id. ¶ 170.)

Plaintiff Jessica Kampschroer ("Jessica") is currently a news anchor and reporter for 5 EYEWITNESS NEWS. (Id. ¶ 166.) She has been a local Minnesota television news reporter and anchor with Channel 5 KSTP since June 2003. (Id. ¶ 165.) Plaintiff Cory Kampschroer ("Cory") is currently a digital media director for KSTP/5 EYEWITNESS NEWS, and previously was a news anchor and reporter for WCCO Radio. (Id. ¶ 167.) During their careers in television news, Jessica and Cory met and interviewed numerous law-enforcement personnel. (Id. ¶ 168.)

In May of 2008, Jessica received a letter from DPS advising that her driver's license information had been inappropriately accessed. (Id. ¶ 410.) Plaintiffs

immediately contacted Pat McCormack, DPS's Director of Driver and Vehicle Services, and McCormack informed Plaintiffs that only one employee had obtained Jessica's information inappropriately.  (Id. ¶ 411.)  McCormack informed Plaintiffs that "the department has taken the appropriate and allowable disciplinary actions necessary to address this matter with the employee," and inappropriate accesses were not a widespread concern.  (Id. ¶¶ 412, 415.)  McCormack stated that the individual was from Southern Minnesota, whose motive was "basic curiosity."  (Id. ¶¶ 413-14.)  Verbally and in writing, McCormack informed Jessica that employee use of the information would be monitored, and DPS has "addressed and reinforced its data privacy practices with other staff."  (Id. ¶ 417.)

On June 11, 2008, Jessica received notice from TCF Bank that a person named "Jessica Miles" went to a Mankato-area TCF branch, changed Jessica Kampschroer's bank account information, and was issued a new card.  (Id. ¶¶ 420, 423.)  Jessica, however, had not changed her TCF bank information.  (Id. ¶ 420.)  Concerned that the fraudulent access of her TCF bank account related to the earlier incident identified by DPS, Jessica contacted McCormack again.  (Id. ¶¶ 424-25.)  McCormack reassured Jessica that the incident was isolated and had been addressed.  (Id. ¶¶ 424, 426.)  Consequently, Jessica did not take further action.  (Id. ¶ 426.)

In January of 2013, Jessica received a letter from the Department of Natural Resources, advising that her information had been accessed by an individual for an impermissible purpose.  (Id. ¶ 427.)  Plaintiffs then contacted DPS to inquire whether law enforcement officers had been viewing their private information.  (Id. ¶ 428.)

On July 30, 2013, Jessica learned from DPS that officers and personnel from approximately one hundred eighty different departments and agencies had reviewed, obtained, or used her private information approximately 1,380 times since 2003.  (Id. ¶ 429.)  On August 12, 2013, Cory learned from DPS that officers and personnel from approximately forty different departments and agencies had reviewed, obtained, or used his private information approximately 92 times since 2003.  (Id. ¶ 430.)  The audit reports for Jessica and Cory from DPS are attached to the Second Amended Complaint.  (Exs. A and B to Second Am. Compl. [Doc. Nos. 20-1, 20-2].)

The audit reports show several concerning patterns regarding these lookups.  First, it appears that Defendants obtained Plaintiffs' personal information on all days of the week, at varying times of day and night.  (Mar. 7, 2014, Hr'g Tr. at 38.)  There were, for example, three hundred and fifty nine accesses of Jessica's information between 10:00 p.m. and 6:00 a.m.  (Id.)

Second, they demonstrate that in a number of instances, officers in the same department searched Jessica and Cory's personal information within minutes of each other.  On July 25, 2010, "Bloomington PD User 14" looked up Jessica's information at 8:02 p.m., and "Bloomington PD User 1" looked up Cory's information at 8:03 p.m.  (Ex. A to Second Am. Compl. at 3 [Doc. No. 20-1]; Ex. B to Second Am. Compl. at 1 [Doc. No. 20-2].)  On April 1, 2009, "Bloomington PD User 15" looked up Jessica's information at 10:56 p.m., and "Bloomington PD User 2" looked up Cory's information once at 10:55 p.m. and twice at 10:56 p.m.  (Ex. A to Second Am. Compl. at 3; Ex. B to Second Am. Compl. at 1.)  On April 23, 2010, "Crow Wing Co Sheriff User 4" looked up

Jessica's information at 6:46 a.m., and "Crow Wing Co Sheriff" looked up Cory's information at 6:47 a.m.  (Ex. A to Second Am. Compl. at 9; Ex. B to Second Am. Compl. at 2.)

On September 16, 2009, "Farmington PD User 2" looked up Jessica's information at 6:53 p.m. and 6:54 p.m., and "Farmington PD" looked up Cory's information at 6:55 p.m.  (Ex. A. to Second Am. Compl. at 14; Ex. B to Second Am. Compl. at 3.)  On October 31, 2007, "Mpls Park PD" looked up Cory's information at 6:12 a.m., and "Mpls Park PD User 4" looked up Jessica's information at 6:13 a.m.  (Ex. B to Second Am. Compl. at 4; Ex. A to Second Am. Compl. at 28.)  On April 2, 2009, "Ramsey PD" looked up Cory's information twice at 4:10 p.m., and "Ramsey PD User 3" looked up Jessica's information twice at 4:11 p.m.  (Ex. B to Second Am. Compl. at 4; Ex. A to Second Am. Compl. at 32.)  On April 4, 2009, "Robbinsdale PD" looked up Cory's information at 7:38 a.m. and 7:39 a.m., and "Robbinsdale PD" looked up Jessica's information at 7:39 a.m.  (Ex. B to Second Am. Compl. at 4; Ex. A to Second Am. Compl. at 33.)

On July 10, 2011, "Woodbury PD" looked up Cory's information at 4:41 p.m., and "Woodbury PD User 2" looked up Jessica's information at 4:42 p.m.  (Ex. B to Second Am. Compl. at 5; Ex. A to Second Am. Compl. at 45.)  On September 11, 2011, "Wright Co Sheriff User 1" looked up Cory's information at 8:56 a.m., and "Wright Co Sheriff User 19" looked up Jessica's information at 8:57 a.m.  (Ex. B to Second Am. Compl. at 5; Ex. A to Second Am. Compl. at 46.)  Finally, on January 27, 2010, "Wright Co Sheriff User 3" looked up Cory's information at 12:17 p.m., and "Wright Co Sheriff User 30"

looked up Jessica's information at 12:17 p.m.  (Ex. B to Second Am. Compl. at 5; Ex. A to Second Am. Compl. at 47.)

The audit reports also show various Defendants looking up Jessica's information on the same day, sometimes within minutes of each other, and often with great frequency. At oral argument, Plaintiffs provided a demonstrative to the Court based on the audit information, demonstrating that it is plausible, based on the troubling patterns of lookups, to infer that they were not accessed for a permissible purpose under the DPPA.  (Mar. 7, 2014, Hr'g Tr. at 41.)  For instance, on October 2, 2006, three different police departments (Richfield, St. Anthony, and New Hope) all accessed Jessica's information within a matter of minutes of each other.  (Id. at 41-42.)  Plaintiffs

On December 15, 2006, from 7:00 a.m. to 10:00 p.m., eight different agencies from all over the state accessed Jessica's personal information.  (Id. at 43.)  On July 30, 2007, nine different agencies accessed Jessica's personal information throughout the day, some of them at the same time or within minutes of each other.  (Id. at 44-45.)  On December 17, 2007, four different police departments accessed Jessica's personal information within the span of one hour.  (Id. at 45.)  On January 22, 2008, four different entities also accessed Jessica's personal information within the span of one hour.  (Id.) Plaintiffs correctly note the unlikelihood that Jessica was in the presence of several officers in different jurisdictions within a short span of time, (id. at 42), particularly because she has never been advised that she was a suspect or interested party in any law enforcement matter.  (See Second Am. Compl. ¶ 346.)  Altogether, these facts plausibly infer that the lookups did not occur in the course of typical law enforcement functions.

It is further alleged that Defendants used Jessica's and Cory's names, not their license plate numbers, to look up their private information in the DVS Database.  (Second Am. Compl. ¶ 434.)  Plaintiffs provided the following information to DPS, in order to acquire and use a State of Minnesota driver's license: their addresses, color photographs, dates of birth, weights, heights, eye colors, social security numbers, and medical information.  (Id. ¶ 485.)  They did not provide consent for any of the Defendants to obtain, disclose, or use their private information for anything but official, law-enforcement business.  (Id. ¶ 485.)  Plaintiffs allege that they committed no crimes or transgressions that would explain or legitimize the unauthorized access of their private information.  (Id. ¶ 457.)

Plaintiffs filed their Complaint [Doc. No. 1] on September 15, 2013, a First Amended Complaint [Doc. No. 19] on October 4, 2013, and a Second Amended Complaint [Doc. No. 20] on October 7, 2013.  The Second Amended Complaint alleges the following claims: (1) violation of the Driver's Privacy Protection Act ("DPPA") (against all Defendants); (2) violation of 42 U.S.C. § 1983 (against all individual Defendants); (3) violation of 42 U.S.C. § 1983 (against Entity Defendants and Supervisor Defendants, but not Rochester Motors, LLC); (4) violation of 42 U.S.C. § 1983 (against Commissioner Defendants, McCormack, and DPS Does); and (5) common law invasion of privacy (against all Defendants).  Defendants now move to dismiss or sever all claims, arguing that they fail under the relevant statutes of limitations; they fail to state a claim under the DPPA; they fail to state a claim under Section 1983; they fail to state a claim for invasion of privacy; they fail for improper joinder; and even if Plaintiffs state a claim,

Defendants are entitled to qualified immunity.

## III.   DISCUSSION

### A.  Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court assumes the facts in the Complaint to be true and construes all

reasonable inferences from those facts in the light most favorable to the plaintiff.  Morton v.

Becker, 793 F.2d 185, 187 (8th Cir. 1986).  The Court, however, need not accept as true

wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799,

805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled.

Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545

(2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative level."

Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citing Twombly, 550 U.S. at 555).  In short, this standard "calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."

Twombly, 550 U.S. at 556.

Rule 12(c) of the Federal Rules of Civil Procedure provides that a motion for

judgment on the pleadings is appropriate after the pleadings are closed.  FED. R. CIV. P.

12(c).  A motion for judgment on the pleadings will be granted "only where the moving

party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004).

A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim. Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009). Well-pleaded facts, not legal theories or conclusions, determine the adequacy of the complaint. Id. The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id.

### B. DPPA Claims

#### 1. Background

The DPPA generally restricts the use and distribution of personal information contained in motor vehicle records. 18 U.S.C. §§ 2721-2725. This statute provides a limited right of action against a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under the statute. Id. § 2724(a). As defined by the Act, "personal information" means information that identifies an individual, including name, photograph, address, social security number, telephone number, driver identification number, and medical or disability information. Id. § 2725(3). The exception provision, 18 U.S.C. § 2721(b), sets forth several permissible uses of personal information for various governmental and business purposes, such as "use by any government agency, including any court or law enforcement agency, in carrying out its functions." Id. § 2721(b)(1).

As for remedies, the DPPA allows: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate.  18 U.S.C. § 2724(b).  Criminal fines are permitted against an individual who "knowingly violates this chapter," id. § 2723(a), as are civil penalties for noncompliance by any "State department of motor vehicles."  Id. § 2723(b).

## 2.  Statute of Limitations

Because the DPPA does not contain a statute of limitations, the general four-year federal statute of limitations applies.  See 28 U.S.C. § 1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress . . . may not be commenced later than 4 years after the cause of action accrues.").  The parties contest when this four-year period began to run.  Defendants argue that the "standard rule" applies, under which a claim accrues when the plaintiff has a complete and present cause of action."  (E.g., Def. Anoka Cnty.'s Mem. in Supp. of Mot. to Dismiss at 4-9 [Doc. No. 94].)  In this context, the clock would have started when Plaintiffs' driver's license information was accessed.  Plaintiffs respond that the "discovery rule" applies to DPPA claims, and that the cause of action does not begin to accrue until the plaintiff has discovered it.  (E.g., Pls.' Mem. of Law in Opp'n to Def. Anoka County's Mot. to Dismiss at 10-28 [Doc. No. 169].)  Alternatively, Plaintiffs argue that if the Court applies the standard rule, an equitable doctrine should apply to toll the statute of limitations.  (Id. at 28-30.)

Neither the United States Supreme Court nor the Eighth Circuit has addressed this issue. Rasmusson v. Chisago Cnty., Civ. No. 12-632 (SRN/JSM), 2014 WL 107067, at *11 (D. Minn. Jan. 10, 2014). This District, however, has found repeatedly that the standard rule for accrual applies, such that a DPPA cause of action accrues at the time the improper access of information occurs. See, e.g., id.; Mallak v. Aitkin Cnty., Civ. No. 13-2119 (DWF/LIB), 2014 WL 1285807, at *4-6 (D. Minn. Mar. 31, 2014) (finding that the standard rule applies to the statute of limitations in the context of DPPA cases); Bass v. Anoka Cnty., Civ. No. 13-860 (DSD/JJG), 2014 WL 683969, at *2 (D. Minn. Feb. 21, 2014) (same); Potocnik v. Carlson, Civ. No. 13-2093 (PJS/JJG), 2014 WL 1206403, at *9 (D. Minn. Mar. 24, 2014) (considering the language and history of 28 U.S.C. § 1658(a) and concluding that the standard rule applies); Kost v. Hunt, Civ. No. 13-583 (JNE/TNL), 2013 WL 6048921, at *5-8  (D. Minn. Nov. 15, 2013) (finding that the exceptional nature of the discovery rule, the text and structure of § 1658, and the substantive area covered by the DPPA, all support application of the standard rule). Consistent with these cases, the Court applies the standard rule for accrual to Plaintiffs' DPPA claims. Because Plaintiffs filed their Complaint on September 15, 2013, the DPPA claims that are based on allegations of improper conduct occurring more than four years before that date—i.e., September 15, 2009—are barred.

The Court, however, considers whether an equitable doctrine applies to toll the statute of limitations. The doctrine of equitable tolling "permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances." Kost, 2013 WL 6048921, at *8 (citing Firstcom, Inc. v. Qwest Corp., 555

16

F.3d 669, 675 (8th Cir. 2009)).  Equitable tolling offers "an exceedingly narrow window of

relief," and courts "rarely invoke doctrines such as equitable tolling to alleviate a plaintiff

from a loss of his right to assert a claim."  Kost, 2013 WL 6048921, at *8.  A party seeking

equitable tolling has the burden to show that: (1) he has been pursuing his rights diligently,

and (2) some extraordinary circumstance stood in his way.  Id.

      In Kost, the Court found that the plaintiffs could not show any extraordinary

circumstances preventing them from timely filing their claims.  Id. at *9.  There, the

plaintiffs simply identified their lack of knowledge about any accesses of their data until

they received a letter from the Minnesota Department of Natural Resources, which

prompted them to seek an audit of all such accesses.  Id.  They did not allege that they could

not have conducted the same audit earlier, but only that they lacked any reason to do so.  Id.

The Court therefore found, in part, an "absence of any attempt by Defendants to prevent

Plaintiffs from learning of their claims," which weighed against applying the doctrine of

equitable tolling.  Id.

      The instant case, however, is distinguishable from Kost.  It is alleged that in May of

2008, Jessica received a letter from DPS stating that her driver's license information had

been accessed inappropriately, after which Plaintiffs immediately contacted Pat

McCormack, DPS's Director of Driver and Vehicle Services.  (Second Am. Compl. ¶¶ 410-

11.)  McCormack allegedly incorrectly informed Plaintiffs that only one employee from

Southern Minnesota, motivated by "basic curiosity," had obtained Jessica's information

inappropriately.  (Id. ¶¶ 411, 413-14.)  McCormack also informed Plaintiffs that "the

department has taken the appropriate and allowable disciplinary actions necessary to

address this matter with the employee," that this incident was isolated, and that inappropriate accesses were not a widespread concern.  (<u>Id.</u> ¶¶ 412, 415-16.)  Further, McCormack informed Jessica in writing and verbally that employee use of the information would be monitored, and DPS had "addressed and reinforced its data privacy practices with other staff."  (<u>Id.</u> ¶ 417.)  It is alleged that McCormack "intentionally and fraudulently concealed the massive extent that law-enforcement personnel had obtained Jessica's Private Data"—over 900 times by this point in time.  (<u>Id.</u> ¶¶ 418-19.)

On June 11, 2008, Jessica received notice from TCF Bank that her bank account information had been changed, despite not making any changes herself.  (<u>Id.</u> ¶¶ 420, 422.) Again, Jessica contacted McCormack about her concerns, and McCormack reassured her that the incident had been addressed.  (<u>Id.</u> ¶ 424.)  Based on McCormack's statements, Jessica did not take further action.  (<u>Id.</u> ¶ 426.)

In January of 2013, Jessica again received a letter from the Minnesota Department of Natural Resources, advising that her information had been accessed by an individual for an impermissible purpose.  (<u>Id.</u> ¶ 427.)  This letter prompted Jessica to question whether more individuals than the one previously disclosed had accessed her information impermissibly. (<u>Id.</u>)  Plaintiffs then contacted DPS to inquire whether law enforcement officers had been viewing their private information, and retrieved their respective audits.  (<u>Id.</u> ¶¶ 428-30.) McCormack's actions and statements, if true, understandably might have caused Plaintiffs not to file suit earlier.

Such facts are sufficient to plead equitable tolling.  Discovery is necessary to flesh out the facts concerning McCormack's representations to Plaintiffs.  If true, McCormack's

alleged statements in May of 2008 might be a basis to equitably toll the four-year statute of limitations to Plaintiffs' DPPA claims.  However, even considering the facts in a light most favorable to Plaintiffs, such equitable tolling would only save claims after May of 2004.  Had McCormack not misled the Plaintiffs in May of 2008 and Plaintiffs had then filed suit, all lookups prior to May of 2004 would still be time-barred.  Accordingly, all DPPA claims based on lookups prior to May of 2004 are hereby dismissed as time-barred.[1]

### 3.   Failure to State a Claim

To state a claim under the DPPA, a plaintiff must allege that: (1) a defendant knowingly obtained, disclosed, or used personal information; (2) from a motor vehicle record; (3) for a purpose not permitted.  18 U.S.C. § 2724(a).

### a.   Defendants McCormack, Campion, Dohman, and DPS Does

With respect to Defendants (1) Pat McCormack, Director of Driver and Vehicle Services at the Minnesota Department of Public Safety, (2) Michael Campion, Commissioner of the Minnesota Department of Public Safety, (3) Ramona Dohman, Commissioner of the Minnesota Department of Public Safety, and (4) DPS Does, Plaintiffs allege that they "were and are responsible for creating, maintaining, and providing access to the database that included Plaintiffs' Private Data."  (Id. ¶ 550.)  It is alleged that the "disclosure of [Plaintiffs'] information was made by providing a user account and a password without reasonably requiring or ensuring that accesses would be limited to those for a legitimate purpose."  (Id. ¶ 351.)

---

[1]  These time-barred claims include but are not limited to those against the Metropolitan Airports Commission, whose three alleged lookups occurred in 2003.  (Def. Metro. Airports Comm'n's Mem. in Supp. of Mot. to Dismiss at 1 [Doc. No. 146].)

To be liable under the DPPA, the Defendants *themselves* must have acted with an impermissible purpose.  Bass, 2014 WL 683969, at *3; Nelson v. Jesson, Civ. No. 13-340 (RHK/JJK), 2013 WL 5888235, at *3 (D. Minn. Nov. 1, 2013); see Kiminski v. Hunt, Civ. No. 13-185 (JNE/TNL), 13-389 (JNE/TNL), 13-208 (JNE/TNL), 13-358 (JNE/TNL), 13-286 (JNE/TNL), 2013 WL 6872425, at *9 (D. Minn. Sept. 20, 2013) (analyzing the statutory language of the DPPA to determine congressional intent about the DPPA's knowledge requirement, and reaching the same conclusion).  As noted in Kiminski, "the provision[s of the DPPA] may not be stretched to the point of rewriting it so it reaches others at a state agency who gave the officer database access for a legitimate purpose, merely because they did so in a negligent manner."  Kiminski, 2013 WL 6872425, at *9. Because Plaintiffs do not allege that McCormack, Campion, Dohman, and DPS Does knowingly obtained, disclosed, or used Plaintiffs' personal information from the DVS Database for a purpose not permitted, the Court dismisses the DPPA claims against these Defendants.

### b.  Remaining Defendants

With respect to the remaining Defendants, the Court considers whether Plaintiffs state a claim under the DPPA.  Specifically, the parties dispute whether the first and third elements of the claim are pled sufficiently: whether a Defendant "knowingly obtained, disclosed, or used personal information," and "for a purpose not permitted."  The parties also dispute whether Defendants are entitled to qualified immunity on Plaintiffs' DPPA claims.

Under Iqbal and Twombly, a complaint must contain facts with enough specificity "to raise a right of right to relief above the speculative level," Twombly, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  Iqbal, 556 U.S. at 678.

### i.   "Knowingly Obtained"

The Court considers whether Plaintiffs have alleged adequately that their personal information was "knowingly obtained."  Defendants argue that seeking or viewing information in the DVS Database does not constitute "disclosing," "using," or "obtaining" information in violation of the DPPA.  (E.g., Mot. to Dismiss or Sever by All Other City Defs., Centennial Lakes Police Dep't, Dakota Commc'ns Ctr., and Lakes Area Police Dep't at 13-14 [Doc. No. 135].)  This Court, however, has held that information need not be possessed or acquired in a physical or tangible sense, and that information may be "obtained" merely by viewing it.  Nelson, 2013 WL 5888235, at *2; Mallak, 2014 WL 1285807, at *7.  On this issue, the Court finds the reasoning in Nelson and Mallak persuasive, and therefore concludes that seeking or viewing information is sufficient for "obtaining" it under the DPPA.

Additionally, the Court considers whether the facts alleged in the Second Amended Complaint sufficiently support a claim that Plaintiffs' personal information was "*knowingly* obtained" (emphasis added).  Plaintiffs claim that "numerous law-enforcement personnel and public employees [sic] impermissibly accessed the Minnesota Department of Public Safety's system for maintaining the personal, private information of Minnesota citizens."  (Second Am. Compl., Introduction.)  It is alleged that "officers and personnel

from approximately one hundred eighty different departments and agencies had reviewed,

and impermissibly obtained or used, her [Jessica's] Private Data approximately 1,380 times

since 2003." (Id. ¶ 429.) It is also alleged that "officers and personnel from approximately

forty different departments and agencies had reviewed, and impermissibly obtained or used,

his [Cory's] Private Data approximately 92 times since 2003." (Id. ¶ 430.) Exhibits A and

B to the Second Amended Complaint reflect these accesses, respectively, identifying the

location of each lookup, as well as the date and time of each access between the years 2003

and 2011. (Exs. A and B to Second Am. Compl. [Doc. Nos. 20-1, 20-2].) These facts are

quite similar to the facts in Mallak, in which the Court found that the plaintiff sufficiently

pled that her information was "knowingly obtained." See Mallak, 2014 WL 1285807, at *8.

The Court reaches the same conclusion here.

### ii. "Purpose Not Permitted"

Next, the Court considers whether Plaintiffs adequately allege that their personal

information was obtained for a purpose not permitted under the DPPA. Defendants argue

that the Second Amended Complaint does not raise any plausible inference of an

impermissible use. (E.g., Def. Anoka Cnty.'s Mem. in Supp. of Mot. to Dismiss at 12 [Doc.

No. 94].) Plaintiffs contend that they have alleged a series of specific facts that compel such

an inference. (E.g., Pls.' Mem. of Law in Opp'n to Def. Anoka Cnty.'s Mot. to Dismiss at

169 [Doc. No. 169].)

There are sufficient facts here to infer that Plaintiffs' personal information was

obtained for a purpose not permitted under the DPPA. The Second Amended Complaint

alleges that:

- Plaintiffs are local media personalities in Minnesota who, during their career in television news, have met and interviewed numerous law-enforcement personnel. (Second Am. Compl. ¶¶ 165-168.)

- Plaintiffs' personal information was searched not by license plate number, but rather, their names.  (Id. ¶¶ 4-5, 346.)

- Officers and personnel from approximately one hundred eighty different departments and agencies had accessed Jessica's private information approximately 1,380 times since 2003.  (Id. ¶ 429.)

- Officers and personnel from approximately forty different departments and agencies had accessed Cory's information approximately 92 times since 2003.  (Id. ¶ 430.)

- Plaintiffs have never been advised that they were a suspect or even an interested party in any law enforcement matter.  (Id. ¶¶ 346, 458.)

Further, as discussed earlier, supra Part II, Defendants' troubling patterns of accessing Plaintiffs' private information raise an inference of improper use.  First, Defendants looked up Plaintiffs' information on all days of the week, at different times during the day and night.  Second, on several occasions, officers in the same department searched for Jessica and Cory's personal information within minutes of each other.  Third, various Defendants looked up Jessica's information on the same day, sometimes within minutes of each other, and often with great frequency.  The Court observes the unlikelihood that Plaintiffs were in the presence of any one Defendant within minutes of each other, or that Jessica was in the presence of law enforcement in several jurisdictions within a matter of minutes on any given day.  Considered altogether, these facts suggest that Defendants' lookups of Plaintiffs' private information did not occur in the course of typical law enforcement functions.

These facts, therefore, distinguish this case from others in this District that found a failure to state a DPPA claim.  In some of these cases, the plaintiff unsuccessfully argued

that a sheer number of accesses created a reasonable inference of a violation.  E.g., Bass,

2014 WL 683969, at *3; McDonough v. Al's Auto Sales, Inc., Civ. No. 13-1889

(DSD/FLN), 2014 WL 683998, at *3 (D. Minn. Feb. 21, 2014).  And, in Traub v. City of

Saint Paul, the plaintiff relied on the lookups, her contemporaneous involvement in some

publicized activity, and the absence of direct interaction with any defendant, to infer that the

lookups were for an improper purpose.  Traub v. City of Saint Paul, Civ. No. 13-3017

(MJD/JJK), 2014 WL 2881484, at *4 (D. Minn. June 25, 2014).  The Court, however,

rejected such an inference, noting that

> A total of twelve lookups have been alleged against eight Defendants; one
> look-up is alleged with respect to five Defendants; no more than three
> accesses are alleged by any one Defendant; and none of the motor vehicle
> record searches was conducted at a "questionable" time of day or night.
> There is no allegation that Plaintiff's records were accessed by name rather
> than license plate number, and there is no significant cluster of locations or
> law enforcement agencies making the record requests.

Id.  Unlike these cases, the instant Plaintiffs have identified several concerning patterns of

various Defendants making the record requests.  These patterns, in combination with

Plaintiffs' claim that they have never been an interested party in any law enforcement

matter, their local media status, and their interactions with numerous law-enforcement

personnel in that capacity, support the inference that a permissible purpose for the lookups

did not exist.  See Twombly, 550 U.S. at 555.  At this early stage of litigation, Plaintiffs

need not plead—and indeed, do not know without discovery—the precise impermissible

purpose for which their information was accessed.  See Smythe v. City of Onamia, Civ. No.

12-3149 (ADM/LIB), 2013 WL 2443849, at *6 (D. Minn. June 5, 2013) (noting that "a

person may still violate the DPPA if he retrieves motor vehicle records and does not misuse the information; simply retrieving records without a permitted purpose is a violation").

Because Plaintiffs sufficiently plead that their personal information was knowingly obtained for a purpose not permitted under the DPPA, dismissal of the DPPA claims against the remaining Defendants is therefore inappropriate.

### iii. Qualified Immunity

Finally, the Court considers whether Defendants are entitled to qualified immunity on Plaintiffs' DPPA claims. "Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 suit unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." Saterdalen v. Spencer, 725 F.3d 838, 841 (8th Cir. 2013). Thus, determining whether qualified immunity applies involves consideration of two questions: (1) whether the facts alleged constitute a violation of a constitutional or statutory right, and (2) whether that right was "clearly established" at the time of the alleged violation. LaCross v. City of Duluth, 713 F.3d 1155, 1157–58 (8th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). As for the second question, "'[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Williams v. Herron, 687 F.3d 971, 977 (8th Cir. 2012) (quoting Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2083 (2011)). The court must look to the state of the law at the time the alleged misconduct occurred. Id. (citation omitted). Although there need not have been a case directly on

point in order for the law to have been clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'"  Smith v. City of Minneapolis, 754 F.3d 541, 546 (8th Cir. 2014) (quoting al-Kidd, 131 S. Ct. at 2083).

As discussed above, Plaintiffs have sufficiently alleged that Defendants violated their statutory rights under the DPPA.  However, Defendants argue that, even assuming the access of a motor vehicle record constitutes a violation of the DPPA, it was not "clearly established" that such conduct violated the DPPA at the time the alleged lookups occurred.  (E.g., Def. Ramsey Cnty.'s Mem. of Law in Supp. of Mot. to Dismiss or for Severance at 19-21 [Doc. No. 89].)  Plaintiffs, on the other hand, argue that the statutory language itself provided sufficient notice to Defendants that obtaining private driver's license information without a permissible purpose was prohibited.  (E.g., Pls.' Mem. of Law in Opp. to Def. Hennepin Cnty.'s Mot. to Dismiss and/or to Sever at 9-10 [Doc. No. 170].)

This Court agrees with Plaintiffs.  The DPPA, enacted in 1994, clearly prohibits "knowingly obtain[ing] . . . personal information, from a motor vehicle record, for a purpose not permitted."  By the time the alleged lookups began in 2003—nine years after the DPPA took effect—Defendants would have been on notice of the statute and its prohibitions.  See Mallak, 2014 WL 1285807, at *13.

Defendants' reliance on Roth v. Guzman is misplaced.  (See, e.g., Def. Ramsey Cnty.'s Mem. of Law in Supp. of Mot. to Dismiss or for Severance at 19 [Doc. No. 89].)  In Roth, the pleadings demonstrated that the defendant government officials disclosed personal information from the plaintiffs' motor vehicle records to a company based on

that company's representation that the information would be used for a permissible

purpose under the DPPA.  650 F.3d 603, 607–08 (6th Cir. 2011).  The company then

transferred the information to another entity, which made the information available on its

website.  Id. at 608.  The Sixth Circuit found that the defendants' alleged disclosure was

for "an explicitly permissible purpose" under the DPPA, regardless of the recipient's

undisclosed intention to use the information for an impermissible purpose.  Id. at 611

(emphasis omitted).  However, the court held, even if the DPPA could be read to impose

liability where "personal information disclosed for a purportedly permissible purpose was

actually obtained for an impermissible purpose," that right was not clearly established at

the time of the alleged disclosure because the unlawfulness was not apparent.  Id. at 612.

Here, to the contrary, Plaintiffs' allegations are not based on a contorted reading of

the statutory language, and Defendants' alleged actions were not taken in reliance on the

representations of a third party.  Rather, the unlawfulness of Defendants' alleged conduct

would have been readily apparent to Defendants at the time it occurred because that

conduct contravenes the plain language of the statute.  See Collier v. Dickinson, 477 F.3d

1306, 1311 (11th Cir. 2007) (denying qualified immunity because the DPPA's plain

language prohibiting the release of personal information without the express consent of

the person to whom the information relates "gave clear notice" to the defendant

government officials that the release of such information without consent violated federal

law).  Accordingly, at this stage of the proceedings—where Plaintiffs have adequately

alleged the violation of a clearly established statutory right—Defendants are not entitled

to qualified immunity on Plaintiffs' DPPA claims.

### C. Section 1983 Claims

A claim under 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person of rights secured by either the Constitution or federal laws. Although Section 1983 provides a remedy for violations of statutory and constitutional rights, it does not provide a remedy for all federal laws. Blessing v. Freestone, 520 U.S. 329, 340 (1997). Section 1983 is not an independent source of substantive rights, but rather, the procedural vehicle through which to vindicate federal rights conferred elsewhere. Albright v. Oliver, 510 U.S. 266, 271 (1994). A complaint must allege a deprivation of a specific right, privilege, or immunity. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

Plaintiffs argue that the DPPA confers rights that are separately enforceable under Section 1983. (E.g., Pls.' Mem. of Law in Opp'n to Def. Hennepin Cnty.'s Mot. to Dismiss and/or to Sever at 2 [Doc. No. 170].) Defendants contend that the DPPA is Plaintiffs' exclusive remedy. (E.g., Def. Hennepin Cnty.'s Mem. of Law in Supp. of its Mot. to Dismiss and/or to Sever at 17-24 [Doc. No. 101].)

This Court has addressed this very issue several times, and it sees no reason to depart from its prior holdings. In Rasmusson, the Court found that the comprehensive nature of the DPPA's remedial scheme, along with an analysis of various circuit court decisions, "indicate Congress's intent to foreclose a remedy under § 1983," and therefore dismissed the plaintiff's Section 1983 claim based on an underlying DPPA violation. Rasmusson, 2014 WL 107067, at *6. Similarly, in Nelson, the Court commented that "DPPA's remedial scheme, which is both comprehensive and more restrictive than

Section 1983, expresses Congress's intent to preclude other means of enforcement," and consequently dismissed the plaintiff's Section 1983 claim based on an underlying DPPA violation.  Nelson, 2013 WL 5888235, at *7.  These cases are consistent with rulings on the same issue in Kiminski, 2013 WL 6872425, at *10-14; Bass, 2014 WL 683969, at *6-7; and Mallak, 2014 WL 1285807, at *10-11.  The Court finds the reasoning in these cases to be persuasive, and therefore dismisses Plaintiffs' Section 1983 claims based on an underlying DPPA violation.

Additionally, Counts 2, 3, and 4 of the Second Amended Complaint allege a claim under Section 1983 on the ground that access of Plaintiffs' information in the DVS Database violates their constitutional right to privacy under the Fourth and Fourteenth Amendments.  (Second Am. Compl. ¶¶ 508-568.)  Defendants argue that Plaintiffs' claims do not implicate constitutional rights.  (E.g., Def. Hennepin Cnty.'s Mem. of Law in Supp. of its Mot. to Dismiss and/or to Sever at 17-24 [Doc. No. 101].)

As the Court previously noted, certain private information is entitled to constitutional protection, but not every disclosure of such information implicates the constitutional right to privacy.  Mallak, 2014 WL 1285807, at *11 (citing Cooksey v. Boyer, 289 F.3d 513, 515-16 (8th Cir. 2002)).  A violation of the constitutional right to privacy requires the information disclosed to be "a shocking degradation or an egregious humiliation . . . , or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information."  Mallak, 2014 WL 1285807, at *11 (citation omitted).  In Mallak, the Court considered whether the plaintiff had a constitutional right to privacy in her driver's license record, which included her address,

color photograph, date of birth, weight, height and eye color, and in some instances, medical or disability information. Id. Following prior decisions in this District, the Court concluded that there was no reasonable expectation of privacy in such information because it is "readily and regularly disclosed anywhere one presents a driver's license." Id. The Court disagreed with the argument that sensitive health records and social security numbers were constitutionally protected, because: (1) with respect to social security numbers, the question is unsettled in the Eighth Circuit, and (2) with respect to the medical records, such information is not always protected, and it was not alleged that the plaintiff's medical information was accessed. Id. at *12.

The facts are similar in the instant case, and the Court finds the reasoning in Mallak to be sound. The only difference here is Plaintiffs' allegation that "Defendants viewed Plaintiffs' Private Data from their State-issued driver's license[,] including their home address, color photograph or image, date of birth, eye color, height, weight, driver identification number, and *upon information and belief, medical and social security information*." (Second Am. Compl. ¶ 343 (emphasis added).) In the post-Twombly and Iqbal era, however, the Court finds that merely pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim. See Solis v. City of Fresno, No. 1:11-cv-00053, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012). The Second Amended Complaint contains no factual support underlying the allegation that Defendants viewed Plaintiffs' medical and social security information. Consistent with other cases in this District, the Court concludes that there is no constitutional right of privacy in Plaintiffs' driver's license records. Accordingly,

Plaintiffs' Section 1983 claims based on a constitutional right of privacy are dismissed.[2]

Finally, Defendants seek dismissal of Plaintiffs' claims based on qualified

immunity.  (E.g., Def. Ramsey Cnty.'s Mem. of Law in Supp. of Mot. to Dismiss or for

Severance at 19-21 [Doc. No. 89].)  As discussed above, "[q]ualified immunity shields

government officials from liability and the burdens of litigation in a § 1983 suit unless

the official's conduct violates a clearly established constitutional or statutory right of

which a reasonable person would have known."  Saterdalen, 725 F.3d at 841.  To

overcome the qualified immunity defense, Plaintiffs must show that: (1) the facts

demonstrate the deprivation of a constitutional right, and (2) the right was clearly

established at the time of the deprivation.  Baribeau v. City of Minneapolis, 596 F.3d 465,

474 (8th Cir. 2010).  With respect to Plaintiffs' claims under Section 1983, the Second

Amended Complaint fails to allege a violation of any constitutional or statutory rights.

Accordingly, dismissal of Plaintiffs' Section 1983 claims is warranted on qualified

immunity grounds as well.

### D.  Invasion of Privacy Claim

Plaintiffs also allege a claim for common law invasion of privacy—namely, that

Defendants intruded upon her seclusion.  (Second Am. Compl. ¶¶ 569-74.)  In

Minnesota, intrusion upon seclusion occurs when one "intentionally intrudes, physically

---

[2]  To the extent Plaintiffs allege a claim against the city and county Defendants under Monell v. Department of Social Services, 436 U.S. 658 (1978), for an unconstitutional policy or custom, that claim also fails because there is no underlying violation of Plaintiffs' constitutional rights.  See Mallak, 2014 WL 1285807, at *13.  Thus, the Court dismisses any Monell claim against these Defendants.

or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998). Generally, what is "highly offensive" is a question of fact for the jury, and becomes a question of law only "if reasonable persons can draw only one conclusion from the evidence. Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 745 (Minn. Ct. App. 2001). In determining whether an intrusion is offensive, courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded," and "the number and frequency of the intrusive contacts." Bauer v. Ford Motor Credit Co., 149 F. Supp. 2d 1106, 1109 (D. Minn. 2001). The interference must be a "substantial one, of a kind that would be highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object." Swarthout, 632 N.W.2d at 745. In Lake, for example, circulating a plaintiff's nude photograph met the threshold for conduct that a reasonable person might find highly offensive. Lake, 582 N.W.2d at 235.

The information allegedly accessed here includes Plaintiffs' home address, color photographs, dates of birth, eye color, heights, weights, driver identification numbers, and medical and social security information. (Second Am. Compl. ¶ 343.) No reasonable person could find that the alleged access of a home address, photographs, dates of birth, eye color, heights, weights, and driver identification numbers meets the "highly offensive" threshold. This information is not particularly sensitive in nature, and

individuals routinely turn over such information when they show their driver's license. And, much of this information is apparent from looking at an individual or through public documents.  See, e.g., <u>Bass</u>, 2014 WL 683969, at *7; <u>Mallak</u>, 2014 WL 1285807, at *14; <u>Rasmussen</u>, 2014 WL 107067, at *10; <u>Nelson</u>, 2013 WL 5888235, at *8.  As for Plaintiffs' medical information and social security numbers, any access to such information does not meet the "highly offensive" standard here, because the Second Amended Complaint does not adequately allege such accesses.  It is not enough to allege that Plaintiffs provided their social security numbers and medical information to DPS, (Second Am. Compl. ¶ 483), but not that they were viewed or accessed.  Merely alleging "on information and belief" is insufficient.  The Court therefore concludes that Plaintiffs fail to state a claim for common law invasion of privacy, and dismisses this claim against all Defendants.

### E.  Severance

Finally, various Defendants move for severance under Rule 20 of the Federal Rules of Civil Procedure.  Plaintiffs argue that they have met the requirements of Rule 20, and judicial economy supports joinder of the Defendants.  (Pls.' Mem. of Law in Opp'n to Def. Cities' Mot. to Dismiss at 19-20 [Doc. No. 171].)

Rule 20 permits joinder of defendants if: (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action."  FED. R. CIV. P.

20(a)(2).  A court assesses whether claims are reasonably related on a case-by-case basis.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

The audits show that Plaintiffs' driver's license information was accessed between 2003 and 2011 from different locations throughout Minnesota.  They also show a concerning pattern in which various Defendants accessed Jessica's information in close proximity to each other.  As such, there are facts suggesting that the Defendants acted jointly or otherwise cooperated to access Jessica's information for an impermissible purpose.  Additionally, Plaintiffs' DPPA claims raise questions of law and fact common to all remaining Defendants.  Thus, the requirements of Rule 20 are met, and the Court denies Defendants' motions to sever.

## IV.   ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Defendants Michael Campion, Ramona Dohman, and Pat McCormack's Motion to Dismiss [Doc. No. 54] and Supplemental Motion to Dismiss [Doc. No. 131] is **GRANTED**.

2.  Defendant Rochester Motors' Motion to Dismiss [Doc. No. 76] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

3.  Defendant Metropolitan Council's Motion to Dismiss or Sever [Doc. No. 104] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

4.  Defendant Minneapolis Park and Recreation Board's Motion to Dismiss or Sever [Doc. No. 138] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

5.  Defendant Metropolitan Airports Commission's Motion to Dismiss or Sever [Doc. No. 141] is **GRANTED**.

6.  Defendant Ramsey County's Motion to Dismiss or Sever [Doc. No. 88] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

7.  Defendant Anoka County's Motion to Dismiss [Doc. No. 93] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

8.  Defendant Hennepin County's Motion to Dismiss or Sever [Doc. No. 99] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

9.  Defendant Olmstead County's Motion to Dismiss or Sever [Doc. No. 110] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

10. Defendant Dakota County's Motion to Dismiss [Doc. No. 116] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

11. All other County Defendants' Motion to Dismiss or Sever [Doc. No. 155] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

12. Defendant Saint Louis County's Motion for Judgment on the Pleadings [Doc. No. 164] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

13. Defendant City of Edina's Motion to Dismiss [Doc. No. 121] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

14. Defendant City of Saint Paul's Motion to Dismiss or Sever [Doc. No. 126] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

15. Defendant City of Minneapolis's Motion to Dismiss or Sever [Doc. No. 151] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

16. Motion to Dismiss or Sever by all other City Defendants, Centennial Lakes Police Department; Dakota Communications Center, and Lakes Area Police Department [Doc. No. 130] is **GRANTED IN PART** and **DENIED IN PART**, consistent with this Order.

Dated: October 7, 2014                                    s/Susan Richard Nelson
                                                          SUSAN RICHARD NELSON
                                                          United States District Court Judge